# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HOWMEDICA OSTEONICS CORP., a subsidiary of STRYKER CORPORATION, a New Jersey corporation, | : : : : : : | Civil Action No. 2:16-cv-02330-JMV-JBC |
| Plaintiff, | : : | |
| -against- | : : | **[PROPOSED] ORDER** |
| DJO GLOBAL, INC., a California corporation, KYWIN SUPERNAW, an individual, BRAD BOLINGER, an individual, JAKE EISTERHOLD, an individual, ERIC HUEBNER, an individual, JUSTIN DAVIS, an individual, and TIM BROECKER, an individual, | : : : : : : : : : : : | *Electronically Filed* |
| Defendants. | : | |

**THIS MATTER** having been brought before the Court upon the motion of

Defendants DJO Global, Inc. and Kywin Supernaw pursuant to Federal Rules of

Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), for the entry of an Order

dismissing the Complaint of Plaintiff Howmedica Osteonics Corporation, or, in the

alternative, transferring this action, pursuant to 28 U.S.C. § 1404(a), to the United

States District Court for the Southern District of Indiana, and the Court having read

and considered the submissions of the parties, and having decided the matter pursuant to Federal Rule of Civil Procedure 78, and for good cause shown,

**IT IS** on this _____ day of _____, 2016,

**ORDERED** that Defendants DJO Global, Inc. and Kywin Supernaw's Motion to Dismiss is **GRANTED** and Plaintiff's Complaint is **DISMISSED** in its entirety with prejudice;

Alternatively, it is **ORDERED** that Defendants DJO Global Inc. and Kywin Supernaw's Motion to Transfer is **GRANTED**, and the case is hereby transferred to the United States District Court for the Southern District of Indiana.

_____
The Honorable Michael Vazquez, U.S.D.J.

**BLANK ROME LLP**
A Pennsylvania LLP
Stephen M. Orlofsky
Eric G. Fikry
New Jersey Resident Partners
Terry M. Henry
Michael A. Iannucci
Rosemary McKenna
301 Carnegie Center, 3rd Floor
Princeton, NJ  08540
Telephone:  (609) 750-7700
Facsimile:  (609) 750-7701

*Attorneys for Defendants*
*DJO Global, Inc. and*
*Kywin Supernaw*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWMEDICA OSTEONICS CORP., a subsidiary of STRYKER CORPORATION, a New Jersey corporation, | Civil Action No. 2:16-cv-02330-JMV-JBC |
| Plaintiff, | |
| -against- | *Electronically Filed* |
| | <u>*Oral Argument Requested*</u> |
| DJO GLOBAL, INC., a California corporation, KYWIN SUPERNAW, an individual, BRAD BOLINGER, an individual, JAKE EISTERHOLD, an individual, ERIC HUEBNER, an individual, JUSTIN DAVIS, an individual, and TIM BROECKER, an individual, | **Motion Day:  July 18, 2016** |
| Defendants. | |

## MOTION OF DEFENDANTS DJO GLOBAL, INC.'S AND KYWIN SUPERNAW'S TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TRANSFER TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA

**PLEASE TAKE NOTICE** that, on Monday, July 18, 2016, at 9:00 a.m., or as soon thereafter as counsel may be heard, Defendants DJO Global, Inc. and Kywin Supernaw, through their undersigned attorneys, will move this Court to dismiss Plaintiff's Complaint for lack of personal jurisdiction, improper venue, and for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), or, in the alternative, to transfer this action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Southern District of Indiana.

**PLEASE TAKE FURTHER NOTICE** that Defendants shall rely upon the Memorandum of Law filed in support of this Motion.  A proposed form of Order is also being submitted.

**PLEASE TAKE FURTHER NOTICE** that pursuant to New Jersey Local Rule of Civil Procedure 78.1, Defendants requests oral argument.

Respectfully submitted,

**BLANK ROME LLP**
*A Pennsylvania LLP*

Dated:  June 15, 2016                 *s/ Eric G. Fikry*
Stephen M. Orlofsky
Eric G. Fikry
Terry M. Henry
Michael A. Iannucci
Rosemary McKenna

301 Carnegie Center, 3rd Floor
Princeton, NJ  08540

2

Telephone:  (609) 750-7700
Facsimile:  (609) 750-7701

*Attorneys for Defendants*
*DJO Global, Inc. and Kywin Supernaw*

**BLANK ROME LLP**                     *Attorneys for Defendants*
A Pennsylvania LLP                     *DJO Global, Inc. and*
Stephen M. Orlofsky                    *Kywin Supernaw*
Eric G. Fikry
New Jersey Resident Partners
Terry M. Henry
Michael A. Iannucci
Rosemary McKenna
301 Carnegie Center, 3rd Floor
Princeton, NJ  08540
Telephone:  (609) 750-7700
Facsimile:  (609) 750-7701

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWMEDICA OSTEONICS CORP., a subsidiary of STRYKER CORPORATION, a New Jersey corporation, | : : : : : | Civil Action No. 2:16-cv-02330-JMV-JBC |
| Plaintiff, | : : : | |
| -against- | : : : | *Electronically Filed* |
| DJO GLOBAL, INC., a California corporation, KYWIN SUPERNAW, an individual, BRAD BOLINGER, an individual, JAKE EISTERHOLD, an individual, ERIC HUEBNER, an individual, JUSTIN DAVIS, an individual, and TIM BROECKER, an individual, | : : : : : : : : : : : : | *Oral Argument Requested*  **Motion Day:  July 18, 2016** |
| Defendants. | : : | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS DJO GLOBAL, INC.'S AND KYWIN SUPERNAW'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, TRANSFER

## **TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ....................................................................1

II.     FACTUAL BACKGROUND...........................................................................2

   A.   Stryker's Allegations Regarding Jurisdiction and Venue. ...................2

   B.   Stryker's Allegations in Support of Substantive Claims.. ...................3

III.    LEGAL ARGUMENT ...................................................................................5

   A.   Stryker's Complaint Should be Dismissed Because This Court
        Does Not Have Personal Jurisdiction Over DJO or Supernaw. ............5

        1.   Legal Standard for Dismissal Pursuant to Rule 12(b)(2)............5

        2.   This Court Does Not Have General Jurisdiction Over
             DJO. ...................................................................................7

        3.   This Court Does Not Have Specific Jurisdiction Over
             DJO or Supernaw. .................................................................11

   B.   Stryker's Complaint Must Be Dismissed Because New Jersey is
        Not the Proper Venue to Litigate this Dispute. ..................................13

        1.   Venue in New Jersey is Improper.............................................14

        2.   The Forum Selection Clauses in Some–But Not All–of
             the Individual Defendants' Agreements Do Not Render
             Venue in New Jersey Proper.....................................................15

   C.   Even if this Court is the Proper Forum For this Dispute,
        Stryker's Claims Against DJO and Supernaw Should Be
        Dismissed Pursuant to Rule 12(b)(6) .................................................16

        1.   Standard for Dismissal Under Rule 12(b)(6)............................17

        2.   Stryker Asserts No Claims for Which Supernaw May be
             Held Individually Liable as a Matter of Law............................19

        3.   Stryker's Claims for Tortious Interference Against DJO
             and Supernaw Fail....................................................................20

             a.   New Jersey Law Provides that Inducement of an
                  At Will Employee to Leave for a Competitor is
                  Not Actionable So Long as the Means Utilized are
                  Not Improper. ................................................................20

i

    b. Elements of Tortious Interference. ..................................22

    c. Neither DJO nor Supernaw Have Tortiously
     Interfered With Stryker By Hiring At-Will
     Employees in the Absence of Improper Means..............24

   4. Stryker's Complaint Should Be Dismissed Because All
    of the Elements of Restatement (Second) of Torts §
    768(1) Have Been Established.................................................25

    a. The Relation Concerns a Matter Involved in the
     Competition Between the Actor and the Other. .............25

    b. DJO and Supernaw Did Not Employ Wrongful
     Means..............................................................................25

    c. The Competitor's Action Does Not Create or
     Continue an Unlawful Restraint of Trade. ....................28

    d. The Competitor's Purpose Is at Least in Part to
     Advance His Interest in Competing with the Other. ......29

   5. Stryker's Corporate Raiding Claim (Count I) Should Be
    Dismissed Because it is Duplicative of its Claims for
    Tortious Interference and Is Not an Independent Cause of
    Action.....................................................................................30

   6. Stryker's Unfair Competition Claim (Count V) Should
    Be Dismissed Because it is Duplicative of its Claims for
    Tortious Interference..............................................................31

  D. Alternatively, Transfer of this Action is Appropriate Under 28
   U.S.C. § 1404 ...................................................................................32

IV. CONCLUSION..............................................................................................38

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Al-Ghena Int'l Corp. v. Radwan*,
    957 F. Supp. 2d 511 (D.N.J. 2013) ...................................................................13

*Allied Old English, Inc. v. Uwajimaya, Inc.*,
    No. 11-1239, 2012 U.S. Dist. LEXIS 116261 (D.N.J. Aug. 16,
    2012) .............................................................................................................34

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................17, 18, 19

*Atl. Marine Constr. Co. v. United States Dist. Court*,
    134 S. Ct. 568 (2013) .....................................................................................16

*Avaya, Inc. v. Cisco Sys.*,
    2012 U.S. Dist. LEXIS 79219 (D.N.J. June 6, 2012) .......................................27

*Avtec Indus., Inc. v. Sony Corp. of Am.*,
    205 N.J. Super. 189 (App. Div. 1985) ......................................................*passim*

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...........................................................................17, 18, 19

*C.R. Bard, Inc. v. Wordtronics Corp.*,
    235 N.J. Super. 168 (Law Div. 1989) ..........................................................27, 31

*Cadapult Graphic Sys., Inc.v. Tektronix, Inc.*,
    98 F. Supp. 2d 560 (D.N.J. 2000) ...................................................................32

*Carteret Sav. Bank, FA v. Shushan*,
    954 F.2d 141 (3d Cir. 1992) ..............................................................................6

*Cent. Constr. Mgmt., LLC v. Strongwall Indus., Inc.*,
    No. 15-7342, 2016 U.S. Dist. LEXIS 20771 (D.N.J. Feb. 22, 2016)................35

*Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*,
    912 F. Supp. 747 (D.N.J. 1995) .......................................................................31

*Cottman Transmission Systems. Inc. v. Martino*,
  36 F.3d 291 (3d Cir. 1994) ...............................................................................14

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014).........................................................................8, 9, 10

*Delta Air Lines, Inc. v. Chimet, S.P.A.*,
  619 F.3d 288 (3d Cir. 2010) .............................................................................35

*Dep't of Labor v. Berlanti*,
  481 A.2d 830 (N.J. Super. App. Div. 1984) ....................................................19

*Diversified Indus., Inc. v. Vinyl Trends, Inc.*,
  No. 13-6194, 2014 U.S. Dist. LEXIS 61131 (D.N.J. May 1, 2014) .................31

*E Z Sockets, Inc. v. Brighton-Best Socket Screw Mfg. Inc.*,
  307 N.J. Super. 546 (Ch. Div. 1996) ...........................................................21, 26

*Farber v. Tennant Truck Lines, Inc.*,
  84 F. Supp. 3d 421 (E.D. Pa. 2015) .................................................................10

*Ferens v. John Deere Co.*,
  494 U.S. 516 (1990).........................................................................................35

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009) .............................................................................18

*Fragola v. Plainville Police Dep't*,
  No. 15-6281, 2016 U.S. Dist. LEXIS 66550 (D.N.J. May 20, 2016) ...............33

*Goldlawr, Inc. v. Heiman*,
  369 U.S. 463 (1962).........................................................................................13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011)................................................................................7, 8, 10

*Harley & Lund Corp. v. Murray Rubber Co.*,
  31 F.2d 932 (2d Cir. 1929) ..............................................................................29

*Howmedica Osteonics Corp. v. Sarkisian*,
  No. 14-3449, 2015 U.S. Dist. LEXIS 51420 (D.N.J. Apr. 20, 2015) .........*passim*

*Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*,
282 N.J. Super. 140 (App. Div.) ..........................................................................27

*IKON Office Solutions. Inc. v. Rezente*,
No. 09-cv-4178, 2010 U.S. Dist. LEXIS 10096 (E.D. Pa. Feb. 3,
2010) ..................................................................................................................16

*IMO Indus., Inc. v. Kiekert AG*,
155 F.3d 254 (3d Cir. 1998) ................................................................................6

*In re Asbestos Prods. Liability Litig. (No. VI)*,
MDL No. 875, 2014 U.S. Dist. LEXIS 150819 (E.D. Pa. Oct. 23,
2014) ..............................................................................................................9, 10

*In re Consolidated Parlodel Litig.*,
22 F. Supp. 2d 320 (D.N.J. 1998) ......................................................................34

*J. McIntyre Mach., Ltd. v. Nicastro*,
131 S. Ct. 2780, 2785 (2011) ............................................................................12

*Jumara v. State Farm Ins. Co.*,
55 F.3d 873 (3d Cir. Pa. 1995) ..........................................................................33

*LG Elecs., Inc. v. First Int'l Computer, Inc.*,
138 F. Supp. 2d 574 (D.N.J. 2001) ....................................................................34

*Luxama v. Ironbound Exp., Inc.*,
No. 11-2224, 2012 U.S. Dist. LEXIS 99292 (D.N.J. June 28, 2012) ...............18

*Malik v. Cabot Oil & Gas Corp.*,
No. 15-7078, 2016 U.S. Dist. LEXIS 65919 (D.N.J. May 19, 2016) ...........5, 12

*McGarvey v. G.I Joe Septic Service, Inc.*,
679 A.2d 733 (N.J. Super. App. Div.) ...............................................................19

*Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*,
960 F.2d 1217 (3d Cir. 1992) ..............................................................................6

*Miller Yacht Sales, Inc. v. Smith*,
384 F.3d 93 (3d Cir. 2004) ............................................................................5, 11

*Monkton Ins. Servs., Ltd. v. Ritter*,
768 F.3d 429 (5th Cir. 2014) .............................................................................10

*Nostrame v. Santiago*,
  213 N.J. 109 (2013) ...............................................................................*passim*

*Oliver v. Funai Corp., Inc.*,
  No. 14-cv-04532, 2015 U.S. Dist. LEXIS 169998 (D.N.J. Dec. 21,
  2015) ..........................................................................................................11

*Otsuka Pharm. Co. v. Mylan Inc.*,
  106 F. Supp. 3d 456 (D.N.J. 2015)...........................................................9

*Plum Tree, Inc. v. Stockment*,
  488 F.2d 754 (3d Cir. 1973) ....................................................................32

*Printing Mart-Morristown v. Sharp Electronics Corp.*,
  116 N.J. 739 (1989) .................................................................................22

*Restaurant Associates v. Anheuser-Busch, Inc.*,
  422 F. Supp. 1105 (S.D.N.Y. 1976) .......................................................26

*Santi v. Nat'l Bus. Records Mgmt., LLC*,
  722 F. Supp. 2d 602 (D.N.J. 2010).........................................................32

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010) ....................................................................18

*Scott v. Lackey*,
  587 Fed. Appx. 712 (3d Cir. 2014)..........................................................12

*Shebar v. Sanyo Bus. Sys. Corp.*,
  218 N.J. Super. 111 (App. Div. 1987) ..............................................25, 26

*Stalwart Capital. LLC v. Warren St. Partners. LLC*,
  No. 11-cv-5249, 2012 U.S. Dist. LEXIS 59872 (D.N.J. Apr. 30,
  2012) ..........................................................................................................14

*Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Group, Inc.*,
  No. A-3714-07T1, 2010 N.J. Super. Unpub. LEXIS 2342 (N.J.
  Super. Ct. App. Div. Sept. 23, 2010)..................................................31, 32

*Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*,
  676 F. Supp. 2d 321 (D. Del. 2009) ........................................................34

*Triangle Film Corp. v. Artcraft Pictures Corp.*,
    250 F. 981 (2d Cir. 1918) ...................................................................29

*Walden v. Fiore*,
    134 S. Ct. 1115 (2014) ......................................................7, 11, 12, 13

*Wear-Ever Aluminum, Inc. v. Townecraft Indus., Inc.*,
    75 N.J. Super. 135 (Ch. Div. 1962) ..................................................24

*Zimmer v. New Jersey Div. of Child Prot. & Permanency*,
    No. 15-2524, 2016 U.S. Dist. LEXIS 6410 (D.N.J. Jan. 20, 2016) .............18, 19

## STATUTES

28 U.S.C. § 1391(b) .......................................................................13, 16

28 U.S.C. § 1391(b)(1) .........................................................................14

28 U.S.C. § 1391(b)(2) .........................................................................14

28 U.S.C. § 1391(b)(3) .........................................................................15

28 U.S.C. § 1391(d) .............................................................................14

28 U.S.C. § 1404(a) ...........................................................1, 32, 35, 36

28 U.S.C. § 1406(a) .............................................................................13

## OTHER AUTHORITIES

24 A.L.R. 3d 821, § 2[a] (1969) .............................................................21

FED. R. CIV. P. 12(b)(2) ........................................................................1, 5

FED. R. CIV. P. 12(b)(3) ......................................................................1, 13

FED. R. CIV. P. 12(b)(6) ..........................................................1, 16, 17, 30

Prosser & Keeton, Torts (5th ed. 1984), § 129 ....................................21

RESTATEMENT (SECOND) OF TORTS § 766 .......................................22, 23

RESTATEMENT (SECOND) OF TORTS § 766B .....................................22, 23

RESTATEMENT (SECOND) OF TORTS § 768(1) ...........................23, 25, 28, 29, 30

RESTATEMENT (SECOND) OF TORTS § 768(1)(a) ....................................................25

RESTATEMENT (SECOND) OF TORTS § 768, cmt. i. ..................................................24

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 1 cmt.....................................31

Defendants DJO Global, Inc. ("DJO") and Kywin Supernaw ("Supernaw") file this Memorandum of Law in Support of their Motion to Dismiss the Complaint of Plaintiff Howmedica Osteonics Corporation, a New Jersey corporation and subsidiary of Stryker Corporation (hereinafter "Plaintiff" or "Stryker"), pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), or, in the alternative, to transfer this action, pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Southern District of Indiana (the "Motion").  For the reasons set forth herein, DJO and Supernaw respectfully request that the Court grant their Motion and enter an Order in the proposed form attached hereto.

## I.    PRELIMINARY STATEMENT

In this action Stryker, a manufacturer of orthopaedic implants alleges that DJO has engaged in targeted raiding of its sales personnel and is acting in concert with several former Stryker employees to interfere with Stryker's customer relationships.  (Compl. ¶ 1.)  Stryker has acknowledged that it has no evidentiary basis to support its claims, and instead relies exclusively on conclusory statements and speculation in an effort to persuade this Court to allow it to undertake a misguided search for evidence consistent with its unfounded theories of liability. This Court should not countenance Stryker's improper tactics by allowing it to pursue litigation in the absence of a factual and legal basis for doing so.

Defendants herein, DJO and Mr. Supernaw—a former Stryker employee—respectfully move to dismiss Stryker's Complaint for Plaintiff's failure to establish that: (1) this Court has personal jurisdiction over them; (2) venue is proper in this District; and, (3) Defendants engaged in conduct that could result in a finding of liability against them, consistent with New Jersey law, even assuming Stryker's allegations to be true.

## II.   FACTUAL BACKGROUND

### A.   Stryker's Allegations Regarding Jurisdiction and Venue.

Stryker's Complaint acknowledges that DJO is a Delaware corporation with a principal place of business in California, (Compl. ¶ 7), but contends that this Court nevertheless has personal jurisdiction over DJO based entirely upon the conclusory assertion that, "DJO regularly conducts business in New Jersey" (*id.* ¶ 15).

Similarly, Stryker claims that personal jurisdiction exists over Mr. Supernaw based entirely upon the unsubstantiated contention that, "DJO and Supernaw have committed and continue to commit tortious acts in and/or related to this State," (*id.* ¶ 15), despite conceding that Supernaw is a citizen of, and is domiciled and residing in Indiana (*Id.* ¶ 8). All of the other individually-named defendants are also citizens of, and are domiciled and residing in Indiana. (*Id.* ¶¶ 9-13.)

All of the events giving rise to Stryker's claims occurred in Indiana, which is

where the individually named worked for Stryker and where they continue to work on behalf of DJO (whether as employees or contracted sales agents), allegedly in violation of their Stryker' agreements. (*Id.* ¶¶ 2, 8-13.) Finally, all of the alleged improper conduct occurred in, and all of the effects arising therefrom are concentrated in Indiana. (*See, e.g.*, *id.* at ¶ 4.)

### B. Stryker's Allegations in Support of Substantive Claims.

Stryker's Complaint asserts the following causes of action against DJO and Supernaw: corporate raiding (Count I); tortious interference with contract (Count III); tortious interference with prospective economic advantage (Count IV); and unfair competition (Count V).

Stryker contends that it initiated this litigation to stop the targeted raiding of its employees by DJO, which Stryker characterizes as its direct competitor. (Compl. ¶ 1.) Stryker further alleges that DJO is acting in concert with Stryker's former employees, Kywin Supernaw, Brad Bolinger, Tim Broecker, Justin Davis, Jake Eisterhold, and Eric Huebner to interfere with Stryker's customer relationships and revenue streams. (*Id.*)

It is undisputed that Mr. Supernaw resigned from his employment with Stryker **five years ago** on June 16, 2011, and he is not subject to any non-competition agreement. (*Id.* ¶ 30.) Conspicuously absent from Stryker's Complaint is any allegation that Supernaw engaged in any conduct outside the

course and scope of his employment with DJO.

Stryker also concedes that it terminated former employees Bolinger and Broecker on May 15, 2015 as part of a corporate reorganization.  (*Id.* ¶¶ 64, 66.) Bolinger and Broecker were both parties to a "Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement" which, among other things, contained provisions purporting to create post-employment restrictions against soliciting and competing for their former customers ***for a period of one year after the termination of their employment with Stryker***.  (*Id.* ¶¶ 45, 49, 56-59.)   Bolinger and Broecker's post-employment non-solicitation and non-competition restrictions are now expired.

The remaining individual co-Defendants—Davis, Eisterhold, and Huebner— resigned from Stryker on February 11, 2016.  (*Id.* ¶¶ 32-34.)  Stryker contends that Davis, Eisterhold and Huebner are also parties to a "Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement" containing provisions similar to the agreements Stryker had with Bolinger and Broecker.  (*Id.* ¶¶ 46-48, 50.)

Stryker's claims for corporate raiding, tortious interference and unfair competition are based entirely upon the conclusory assertion that DJO and Supernaw organized a scheme to illegally acquire Stryker's workforce unfairly compete against Stryker.  (*Id.* ¶ 82.)   Stryker summarily states that DJO's

4

solicitation of Stryker's employees "was undertaken with unlawful and improper purpose" and that "its solicitation of Stryker's employees occurred through unlawful or improper means" without any further detail regarding the conduct which it claims constitutes improper or wrongful means consistent with New Jersey law. (*Id.* ¶¶ 83-84.)

Stryker's Complaint contains only non-specific allegations "upon information and belief" that the individually-named Defendants have violated their agreements with Stryker, and engages in speculation that something improper may have occurred. (Compl. ¶ 70.)

## III.   LEGAL ARGUMENT

### A.   Stryker's Complaint Should be Dismissed Because This Court Does Not Have Personal Jurisdiction Over DJO or Supernaw.

#### 1.   <u>Legal Standard for Dismissal Pursuant to Rule 12(b)(2).</u>

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), it is Stryker's burden to establish this Court's jurisdiction over the Defendants by a preponderance of the evidence. *Malik v. Cabot Oil & Gas Corp.*, No. 15-7078, 2016 U.S. Dist. LEXIS 65919, at *5-6 (D.N.J. May 19, 2016) (motion to dismiss for lack of personal jurisdiction granted) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)).   In response to a motion to dismiss, the plaintiff must "present … a prima facie case for the exercise of personal jurisdiction by establishing with reasonable

particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). Once the plaintiff meets this burden, the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable. *See Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992). Here, Stryker's Complaint is devoid of any allegations, much less any with particularity, that support a finding that this Court should exercise personal jurisdiction over DJO, a Delaware corporation with its principal place of business in California, (Compl. ¶ 7), and Supernaw, an Indiana resident (*Id.* ¶ 8).

A federal court sitting in diversity engages in a two-step inquiry to determine whether it may exercise personal jurisdiction. The court must first determine whether the relevant state long-arm statute permits the exercise of jurisdiction; if so, the court must then satisfy itself that the exercise of jurisdiction comports with due process. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 258-59 (3d Cir. 1998). New Jersey's long-arm statute extends the state's jurisdictional reach as far as the United States Constitution permits, so the analysis turns on the federal constitutional standard for personal jurisdiction. *Id.* at 259.

Personal jurisdiction divides into two groups: "specific jurisdiction" and "general jurisdiction." Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy (*i.e.*, an activity or an occurrence that

6

takes place in the forum State and is therefore subject to the State's regulation)." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (internal quotations omitted). General jurisdiction, on the other hand, "permits a court to assert jurisdiction over a defendant based on a forum connection unrelated to the underlying suit ...." *Id.*

Stryker devotes only a single, generic paragraph to the issue of personal jurisdiction, alleging that this Court has specific jurisdiction over both DJO and Supernaw because they have allegedly "committed and continue to commit tortious acts in and/or related to [New Jersey]," and general jurisdiction over DJO because "upon information and belief, DJO regularly conducts business in New Jersey."  (Compl. ¶ 15.)  Stryker's allegation is legally insufficient and factually wrong.

### 2.  <u>This Court Does Not Have General Jurisdiction Over DJO.</u>

Stryker alleges only that DJO is subject to general jurisdiction in New Jersey by virtue of the fact that, "upon information and belief, DJO regularly conducts business in New Jersey."  (Compl. ¶ 15.)[1]

---

[1] Stryker makes no allegations that this Court can exercise general jurisdiction over Supernaw nor could, it as Supernaw is an Indiana resident (as Stryker alleges) with no continuous or systematic affiliation with New Jersey.

General jurisdiction is satisfied when the defendants' affiliations with the forum state are "so continuous and systematic as to render them essentially at home in the forum state." *Goodyear*, 131 S. Ct. at 2851 (internal citation and quotation marks omitted). For a corporate defendant, the main bases for general jurisdiction are (1) the place of incorporation; and (2) the principal place of business. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014) (internal citations omitted).

The Supreme Court recently revisited the issue of what constitutes "continuous and systematic" contacts with the forum state sufficient to render the defendant at home in the forum. *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014). In *Daimler*, the Supreme Court explained that a corporation's place of incorporation and principal place of business are paradigm bases for general jurisdiction. *Id.* at 760. The Supreme Court reasoned that "[t]hose affiliations have the virtue of being unique—that is, each ordinarily indicates only one place— as well as easily ascertainable. . . . [They] afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.* Although a corporation may be subject to general jurisdiction in places other than where it is incorporated and has its principal places of business, a corporation is not subject to general jurisdiction in every state where it engages in a substantial, continuous, and systematic course of business. *Id.* at 761.

8

In *Diamler*, the corporate defendant was neither incorporated nor did it have its principal place of business in California, but it did have multiple California-based facilities, including a regional office and two vehicle service centers, and was the *largest supplier* of luxury vehicles in the California market. *Id.* at 761. In addition, the defendant's California sales accounted for 2.4% of its sales worldwide. *Id.* at 760-62. Nevertheless, the Supreme Court held on these facts that the defendant did not have such continuous and systematic affiliations with California such that it was at home in California for purposes of establishing general jurisdiction. *Id.* at 760-62.

The Supreme Court noted that if California could exercise jurisdiction over the defendant on these facts, then the defendant would be subject to jurisdiction in every state where the defendant had sizeable sales. *Id.* at 761. The Supreme Court specifically rejected this approach: "[s]uch exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 761-62 (internal citation omitted); *see also Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 466 (D.N.J. 2015) (citing *In re Asbestos Prods. Liability Litig. (No. VI)*, MDL No. 875, 2014 U.S. Dist. LEXIS 150819, at *19 (E.D. Pa. Oct. 23, 2014) (noting that "an 'exceptional case' authorizing general jurisdiction is one in which the defendant's forum

contacts are so pervasive that they may substitute for its place of incorporation or principal place of business") and *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (finding that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business")); *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 430 (E.D. Pa. 2015) (explaining that "after *Goodyear* and *Daimler* '[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business'") (internal citation omitted).

Thus, the test for exercising general, "all-purpose" jurisdiction is a determination of whether the corporation is "at home" in the forum such that it is subject to suit on **any and all** claims, even claims arising on activities outside of the forum state. *Daimler*, 134 S. Ct. at 754.

DJO is neither incorporated in nor is its principal place of business located in New Jersey. The sole basis of Stryker's claim for general jurisdiction is its allegation that "upon information and belief, DJO regularly conducts business in New Jersey." (Compl. ¶ 15.) This conclusory statement is wholly insufficient to establish general jurisdiction over DJO. Indeed, Stryker has failed to set forth any facts to demonstrate that DJO is "at home" in New Jersey.

In light of *Goodyear* and *Daimler*, Stryker has failed to satisfy its burden of establishing that DJO is "at home" in New Jersey; accordingly, Defendants'

motion to dismiss DJO for lack of personal jurisdiction should be granted.

### 3. **This Court Does Not Have Specific Jurisdiction Over DJO or Supernaw.**

Similarly, this Court does not have specific jurisdiction over DJO or Supernaw. "Specific jurisdiction over a defendant exists when that defendant has 'purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Oliver v. Funai Corp., Inc.*, No. 14-cv-04532, 2015 U.S. Dist. LEXIS 169998, at *17 (D.N.J. Dec. 21, 2015) (*quoting Miller Yacht Sales*, 384 F.3d at 96) (internal citation omitted).

More recently, the Supreme Court found that a Nevada court could not exercise specific jurisdiction over a Georgia defendant based on the defendant's knowledge that his false affidavit would cause harm to the plaintiffs in Nevada. *Walden*, 134 S. Ct. at 1119. For a state to exercise specific jurisdiction in accordance with due process, "the **defendant's suit-related** conduct must create a substantial connection with the forum State." *Id.* at 1121 (emphasis supplied). **Thus, there must be a relationship between the defendant, the forum, and the litigation, but it must be the defendant, not the plaintiff or third parties, who creates the suit-related contact with the forum State**. *Id.* at 1126. As the Court explained, "[t]he proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a

11

meaningful way." *Id.* at. 1125.  *See also Scott v. Lackey*, 587 Fed. App'x 712, 716-18 (3d Cir. 2014) (relying on *Walden* to uphold dismissal of claims for lack of jurisdiction); *Malik*, 2016 U.S. Dist. LEXIS 65919, at *12-15.

In this litigation, neither DJO nor Supernaw has any connection to New Jersey that would allow this Court to assert specific jurisdiction over them.  *See, e.g.*, *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2785 (2011) (plurality opinion).  That DJO may conduct business in New Jersey is irrelevant because there is no alleged connection between DJO's business activities in New Jersey and the subject matter of Stryker's Complaint.  To the contrary, as discussed below Stryker's Complaint focuses on the alleged "raiding" of its former Indiana sales personnel—all of whom are Indiana residents—over a five-year period, and the alleged breach of those individuals' non-competition agreements seeking to protect Stryker's Indiana business.  Indeed, New Jersey is not the proper forum for Stryker's claims against DJO and Supernaw because there is no connection between DJO, Supernaw, the forum and the litigation.  *Walden*, 134 S. Ct. at 1121. As in *McIntyre*, neither DJO nor Supernaw purposefully availed themselves of conducting activities within New Jersey that gave rise to Stryker's claims, and Stryker makes no such allegation.

The absence of any connection between DJO and Supernaw and New Jersey and the subject matter of this litigation precludes a finding of specific jurisdiction over DJO or Supernaw.  *Id.* at 2786, 2790-91.

### B. Stryker's Complaint Must Be Dismissed Because New Jersey is Not the Proper Venue to Litigate this Dispute.

This action should be dismissed pursuant to Rule 12(b)(3) for the additional reason that venue in this Court is improper where, as here, none of the 28 U.S.C. § 1391 factors are present.  *See* FED. R. CIV. P. 12(b)(3) (relating to dismissal for improper venue).

Pursuant to Section 1391(b), where jurisdiction is founded solely on diversity of citizenship, there are only three proper venues where the case can be brought: (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).  In assessing venue, a plaintiff's residence is irrelevant.  *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 520 (D.N.J. 2013).  Under 28 U.S.C. § 1406(a), if venue is not proper, district courts are required either to dismiss or transfer to a proper forum.  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962).

13

1. **Venue in New Jersey is Improper.**

Section 1391(b)(1) does not confer venue in New Jersey because none of the Defendants in this case reside in New Jersey and, as discussed in Section III-A above, DJO and Supernaw are not subject to the Court's jurisdiction.  *See* 28 U.S.C. § 1391(d) (defining corporate residence for venue purposes).

Section 1391(b)(2) also does not apply because a "substantial part" of the events giving rise to Stryker's claims did not occur in New Jersey, and any stray occurrences in New Jersey do not approach the threshold of substantiality.  "The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'"  *Cottman Transmission Systems. Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).  Events or omissions that have only "some tangential connection" with the dispute are insufficient to support venue under this subsection.  *Id.* at 294.  "For breach of contract of claims, courts considering substantial events or omissions take into account where the contract was negotiated, executed, performed, and breached."  *Stalwart Capital. LLC v. Warren St. Partners. LLC*, No. 11-cv-5249, 2012 U.S. Dist. LEXIS 59872, at *13 (D.N.J. Apr. 30, 2012).

Here, all of the events giving rise to Stryker's claims occurred in Indiana. This is where the Individual Defendants reside and where they worked on behalf of Stryker and where they continue to work on behalf of DJO (whether as employees

14

or contracted sales agents), allegedly in violation of their Stryker agreements. (*See* Compl. ¶¶ 2, 8-13.)   Furthermore, the alleged improper conduct of DJO in "raiding" Stryker's workforce and engaging in other unfair and anti-competitive acts occurred in and was concentrated in Indiana. (*See, e.g.*, *id.* ¶ 4 ("[a]ltogether, DJO has targeted, solicited and/or hired at least a dozen Stryker employees, **with its recent efforts concentrated in Indiana**." (emphasis supplied).)

Finally, Section 1391(b)(3) does not apply because there is another district in which this action might have been brought—the Southern District of Indiana, where all of the parties are subject to personal jurisdiction and can be properly joined in a single action.

### 2. The Forum Selection Clauses in Some–But Not All–of the Individual Defendants' Agreements Do Not Render Venue in New Jersey Proper.

Stryker will likely argue that venue is proper as to Defendants Bolinger, Eisterhold, Huebner, and Broecker because the forum selection clauses in their agreements allegedly require them to consent to the jurisdiction of state or federal courts in New Jersey (**while at the same time ignoring that Davis' forum selection clause provides for venue in Michigan**).   This argument is a red herring and misstates federal law relating to venue selection.

Whether venue is "wrong" or "improper" depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue

laws, <u>not</u> the existence of a forum selection clause.  *See Howmedica Osteonics Corp. v. Sarkisian*, No. 14-3449, 2015 U.S. Dist. LEXIS 51420, at *16 (D.N.J. Apr. 20, 2015) (citing *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568, 577 (2013) ("Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in §1391(b).")); *see also IKON Office Solutions. Inc. v. Rezente*, No. 09-cv-4178, 2010 U.S. Dist. LEXIS 10096, at *5 (E.D. Pa. Feb. 3, 2010) ("In a diversity case whether venue is proper rests on the federal venue statute, not the existence of a forum selection clause."); *Atl. Marine Constr. Co.*, 134 S. Ct. at 578 ("[V]enue is proper so long as the requirements of §1391(b) are met, irrespective of any forum-selection clause.").   As such, a forum selection clause cannot vest proper venue in a forum that is otherwise improper under Section 1391(b).   This is particularly so where there is a conflicting forum selection clause and other non-party signatories who never consented to venue in this Court and cannot otherwise be bound by Stryker's agreements.

> **C.**  **Even if this Court is the Proper Forum For this Dispute, Stryker's Claims Against DJO and Supernaw Should Be Dismissed Pursuant to Rule 12(b)(6).**

Even if this Court were to determine that it was the appropriate forum to adjudicate Stryker's claims, Stryker's Complaint should be dismissed in its entirety

because Stryker fails to state a claim upon which relief can be granted concerning DJO and Supernaw.

### 1.   <u>Standard for Dismissal Under Rule 12(b)(6).</u>

The standard for dismissal is well-established through *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and their progeny.  In order to survive a motion to dismiss, "[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal quotations omitted).  In other words, to survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.  The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line

between possibility and plausibility of entitlement to relief.'"   *Id.* (quoting *Twombly*, 550 U.S. at 557).

Importantly, allegations that are "no more than conclusions, are not entitled to the assumption of the truth."   *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679 (internal quotations omitted)). Indeed, the Court need not credit "legal conclusions," "barebones allegations," "threadbare recitals," and "conclusory statements" when deciding a motion to dismiss.   *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal* and *Twombly*).   "In other words, a complaint must do more than allege the plaintiff's entitlement to relief.   A complaint has to 'show' such an entitlement with its facts."   *Id.* at 211.   If the court can only infer the possibility of misconduct, the complaint must be dismissed because it has alleged – but failed to show – that the pleader is entitled to relief.   *Fowler*, 578 F.3d at 211.

Here, the entirety of Stryker's allegations do not rise above "threadbare recitals," "conclusory statements," and barebone allegations" as they are all pled "upon information and belief."   *See Luxama v. Ironbound Exp., Inc.*, No. 11-2224, 2012 U.S. Dist. LEXIS 99292, at *25-26 (D.N.J. June 28, 2012) (where plaintiffs make allegations "[u]pon information and belief" they fall short of the plausibility standard because they offer nothing more "than a sheer possibility that [a defendant] acted unlawfully"); *Zimmer v. New Jersey Div. of Child Prot. &*

*Permanency*, No. 15-2524, 2016 U.S. Dist. LEXIS 6410, at *23 (D.N.J. Jan. 20, 2016) (allegations "on information and belief" are quintessential conclusory statements, and as such "are not entitled to the assumption of truth."). Without more, Stryker's Complaint fails to meet the pleading requirements imposed by *Iqbal* and *Twombly* and should be dismissed.

### 2. <u>Stryker Asserts No Claims for Which Supernaw May be Held Individually Liable as a Matter of Law.</u>

Stryker is using this litigation as a sword to wrongly intimidate its competitors and bully individuals. Stryker's transparent purpose is evident as it named Supernaw as an individual defendant in this litigation without any legal or factual basis. This is improper, and Supernaw must be dismissed. Indeed, Stryker's Complaint contains <u>no allegation that Supernaw took any action that was outside the course and scope of his employment</u>. Accordingly, under the doctrine of *respondeat superior*, DJO would be liable for any of Supernaw's alleged tortious misconduct. *See McGarvey v. G.I Joe Septic Service, Inc.*, 679 A.2d 733, 745 (N.J. Super. App. Div.) (citing *Dep't of Labor v. Berlanti*, 481 A.2d 830 (N.J. Super. App. Div. 1984), *app. den.*, 503 A.2d 846 (N.J. 1985)), *cert. den.*, 686 A.2d 764 (N.J. 1996).

Put simply, Stryker's bullish and baseless attempts to exploit individual employees should be rejected, and Supernaw dismissed.

**3.** **Stryker's Claims for Tortious Interference Against DJO and Supernaw Fail.**

**a.** **New Jersey Law Provides that Inducement of an At-Will Employee to Leave for a Competitor is Not Actionable So Long as the Means Utilized are Not Improper.**

Stryker's Complaint asserts a claim for tortious interference with contractual relationship (Count III) arising from the same set of allegations as its claim for tortious interference with prospective economic advantage (Count IV).  Stryker alleges–entirely "on information and belief"–that DJO tortiously interfered with Stryker's business by virtue of hiring at-will Stryker employees (or former Stryker employees that Stryker had previously fired), and by allegedly assisting or encouraging these employees to destabilize Stryker's Indiana North Central Branch and pull Stryker business to DJO.  (*See* Compl. ¶¶ 70-72.)  According to Stryker, DJO and Supernaw "organized a scheme to raid Stryker's employees as a means to improperly and illegally acquire Stryker's workforce, its customers and its goodwill, in order to harm Stryker in the marketplace so that DJO may unfairly compete against Stryker."  (*Id.* ¶ 82.)  Stryker summarily states that DJO's solicitation of Stryker's employees "was undertaken with unlawful and improper purpose" and that "its solicitation of Stryker's employees occurred through unlawful or improper means."  (*Id.* ¶¶ 83-84.)  Stryker provides no explanation as to what was improper, illegal or unlawful about DJO's alleged "scheme."  Instead, it alleges only that DJO and Supernaw knew about Bolinger, Huebner, Davis,

Eisterhold and Broecker's non-competition agreements and "intentionally induced, permitted, or incentivized the employees to violate the post-employment and then-current contractual obligations to Stryker." (*Id.* ¶¶ 96-97.)  To be clear, DJO flatly denies Stryker's allegation that it engaged in, or encouraged its employees to participate in any scheme to raid Stryker of its employees.  Nevertheless, Stryker's tortious interference claims fail as a matter of law, as it is well-established in New Jersey that:

> The general rule appears to be that the mere inducement of an employee to move to a competitor is not in itself actionable where the employment is terminable at will, but that such inducement is actionable if the party offering the inducement either has an unlawful or improper purpose or uses unlawful or improper means.

*Avtec Indus., Inc. v. Sony Corp. of Am.*, 205 N.J. Super. 189, 194 (App. Div. 1985), quoting Annotation, "Liability for inducing employee not engaged for definite term to move to competitor," 24 A.L.R. 3d 821, § 2[a] at 823 (1969), and Prosser & Keeton, Torts (5th ed. 1984), § 129 at 982-983; *see also E Z Sockets, Inc. v. Brighton-Best Socket Screw Mfg. Inc.*, 307 N.J. Super. 546, 560 (Ch. Div. 1996), *aff'd o.b.*, 307 N.J. Super. 438 (App. Div. 1997) (unless a competitor employed "wrongful" means, it "is insulated from [a] tortious interference claim under the cloak of competitor's privilege.").  This principle was recently re-affirmed by the New Jersey Supreme Court in *Nostrame v. Santiago*, 213 N.J. 109, 123 (2013) (affirming the Appellate Division's dismissal of a complaint prior to discovery,

and holding that a claim for tortious interference cannot be maintained where the contract allegedly being interfered with is terminable at will, in the absence of "improper or wrongful means" and granting motion to dismiss with prejudice).

### b. Elements of Tortious Interference.

In *Nostrame*, the Supreme Court reiterated the general rules defining the elements of claims for tortious interference with an existing contract,[2] and tortious interference with a prospective contractual relationship,[3] and concluded that an "interest in a contract terminable at will is primarily an interest in future relations between the parties, and  …  is closely analogous to interference with prospective contractual relations."   *Nostrame*, 213 N.J. at 122-23 (citing RESTATEMENT

---

[2] The elements of tortious interference with an existing a contract are:  one who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract is subject to liability.  *Nostrame*, 213 N.J. at 122 (citing RESTATEMENT (SECOND) OF TORTS § 766).

[3] The elements of a claim for tortious interference with a prospective contractual relationship are:  one who intentionally and improperly interferes with another's prospective contractual relation … is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.  *Nostrame*, 213 N.J. at 122 (citing RESTATEMENT (SECOND) OF TORTS § 766B); *see also Printing Mart-Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 563 (1989) (holding that in order to prevail on a claim for tortious interference with prospective economic advantage, plaintiff must show the following:  (1) the existence of a reasonable expectation of economic advantage; (2) an intentional and malicious interference with that expectation by the defendant; (3) a causal connection between the interference and the loss of the prospective gain; and (4) damage).

(SECOND) OF TORTS § 766 and comment, and § 766B.  The Court went on to find that in either circumstance, the relevant inquiry is into the means by which the alleged interference with the contractual relationship (existing or prospective) occurred.  *Nostrame*, 213 N.J. at 121.  Accordingly, Stryker's tortious interference claims are addressed collectively herein.

In cases where the parties are competitors—as Stryker alleges is the case here—the Court in *Nostrame* found that a slightly different rule adopted from the Restatement (Second) of Torts should be used to determine whether the conduct constituting the alleged interference is improper:

> ***One who intentionally causes a third person*** not to enter into a prospective contractual relation with another who is his competitor or ***not to continue an existing contract terminable at will does <u>not</u> interfere improperly with the other's relation if***
> > (a)   the relation concerns a matter involved in the competition between the actor and the other and
> > (b)   the actor ***does not employ wrongful means*** and
> > (c)   his action does not create or continue an unlawful restraint of trade and
> > (d)   his purpose is at least in part to advance his interest in competing with the other.

*Nostrame*, 213 N.J. at 123 (citing RESTATEMENT (SECOND) OF TORTS § 768(1) (emphasis added)); *see also Avtec Industries*, 205 N.J. Super. at 193.

c. **Neither DJO nor Supernaw Have Tortiously Interfered With Stryker By Hiring At-Will Employees in the Absence of Improper Means.**

Even presuming the facts as alleged in Stryker's Complaint to be true, *i.e.*, that DJO and Supernaw hired and/or contracted with three of Stryker's at-will employees and two of Stryker's former at-will employees, such actions cannot give rise to a finding of liability as a matter of law.   Relying again upon the Restatement, the Supreme Court in *Nostrame* noted:

> **If the third person is free to terminate his contractual relation with the plaintiff when he chooses,** there is still a subsisting contract relation; but **any interference with it that induces its termination is primarily an interference with the future relations between the parties, and the plaintiff has no legal right but only an expectancy;** and when the contract is terminated by the choice of the third person there is no breach of it.   The competitor is therefore free, for his own competitive advantage, to obtain the future benefits for himself causing the termination.   ***Thus … he may make use of persuasion or other suitable means, all without liability***.

*Nostrame*, 213 N.J. at 122 (citing RESTATEMENT (SECOND) OF TORTS § 768, cmt. i.) (emphasis added); *see also Avtec Indus*, 205 N.J. Super. at 193 ("The mere persuasion of an employee to change jobs is not wrongful; but if it is done to injure the employer, it is wrongful….The right to compete for employees is such an equal right provided it is not done by improper means.") (citing *Wear-Ever Aluminum, Inc. v. Townecraft Indus., Inc.*, 75 N.J. Super. 135, 142 (Ch. Div. 1962)).

Stryker alleges that all of the involved employees were employed at will and

has failed to allege that DJO and Supernaw employed wrongful means.  Therefore, the Court should dismiss Stryker's Complaint as a matter of law.

**4.  <u>Stryker's Complaint Should Be Dismissed Because All of the Elements of Restatement (Second) of Torts § 768(1) Have Been Established.</u>**

The Supreme Court in *Nostrame* used § 768(1) of the Restatement (Second) of Torts to evaluate whether a competitor's conduct constitutes tortious interference.  *Nostrame*, 213 N.J. at 123 (citing Restatement (Second) of Torts § 768(1)).

**a.  The Relation Concerns a Matter Involved in the Competition Between the Actor and the Other.**

Pursuant to Restatement (Second) of Torts § 768(1)(a), a competitor does not interfere with a contractual relationship with another if the relation concerns a matter involved in the competition between the actor and the other.  Here, Stryker alleges throughout its Complaint that it is a competitor of DJO.  Accordingly, there can be no dispute that the conduct in question—the alleged solicitations by DJO—relates directly to a matter involving what Stryker perceives as the competition between the parties, and accordingly, this component of the criteria has been satisfied.

**b.  DJO and Supernaw Did Not Employ Wrongful Means.**

The Supreme Court in *Nostrame* identified the various types of conduct that have been deemed improper or wrongful means by New Jersey courts.  Conduct

that amounts to **fraud, defamation, deceit and misrepresentation** have been recognized as constituting wrongful means. *Nostrame*, 213 N.J. at 124; *Shebar v. Sanyo Bus. Sys. Corp.*, 218 N.J. Super. 111, 118 (App. Div. 1987) (holding that using deceit to prevent employee from accepting alternate employment while planning to terminate him would be actionable). **Violence, intimidation, criminal or civil threats and/or violations of the law** have also been considered wrongful means. *See E Z Sockets, Inc.*, 307 N.J. Super. at 559. In *Avtec Industries*, the Appellate Division found that, "[a]n examination of the cases in which interference has been found discloses **egregious conduct directed toward destruction of a competitor's business**." *Avtec Indus.*, 205 N.J. Super. at 195 (emphasis added). In its review of all of the applicable cases, this Court in *Avtec Industries* concluded, "[w]e have been shown no case in which the wrongful means did not involve **predatory conduct** such as deceit or intended harm to the plaintiff. Nor have we found any. In *Restaurant Associates v. Anheuser-Busch, Inc.*, 422 F. Supp. 1105, 1110, n. 4 (S.D.N.Y. 1976), the court spoke of wrongful means in terms of **fraud or coercion**." *Avtec Industries*, 205 N.J. Super. at 195-96 (internal citations omitted) (emphasis added).

Conversely, "lesser sorts of behavior have been found to fall short of constituting wrongful means in the ordinary business context." *Nostrame*, 213 N.J. at 124. For example, it has been held that **vigorous solicitation of competitor**

26

*company's customers was not wrongful*.  *See Ideal Dairy Farms, Inc. v. Farmland Dairy Farms, Inc.*, 282 N.J. Super. 140, 204-05 (App. Div.) *certif. denied*, 141 N.J. 99 (1995).  Courts have even found that *"sneaky"* and *"underhanded"* acts **do not** constitute "wrongful means."  *See C.R. Bard, Inc. v. Wordtronics Corp.*, 235 N.J. Super. 168, 174 (Law Div. 1989) (emphasis added).

Here, Stryker's generic allegation–that DJO hired and/or contracted with Stryker's at-will or former at-will employees–falls woefully short of that which constitutes "improper or wrongful" means under a tortious interference analysis. *See Avaya, Inc. v. Cisco Sys.*, 2012 U.S. Dist. LEXIS 79219, at *26-27 (D.N.J. June 6, 2012) (soliciting employees from competitors does not in and of itself constitute unfair competition).

The remainder of Stryker's allegations are pure speculation and implausible. Stryker alleges that DJO and Supernaw assisted and encouraged the other Individual Defendants to breach their non-competition agreements in an effort to harm Stryker.  (Compl. ¶ 71.)  Stryker's threadbare, conclusory allegations contain no factual specificity, fail to allege that DJO or Supernaw engaged in wrongful conduct, and fail to meet the pleading standard required by *Twombly/Iqbal*. Beyond hyperbolic, dramatic and generic allegations, Stryker provides no facts at all.  Put simply, the mere fact that DJO hired or contracted with the Individual Defendants or competing for clients that once did business with Stryker does not

state a claim upon which relief can be granted, and Stryker's Complaint should be dismissed.

### c. The Competitor's Action Does Not Create or Continue an Unlawful Restraint of Trade.

The third prong of the § 768(1) criteria used by the Supreme Court in *Nostrame* provides that in the ordinary business context, a party's conduct does not constitute interference if it does not create or continue an unlawful restraint of trade.

Here, the hiring of and/or contracting with Stryker's at-will and former at-will employees cannot under any interpretation be considered an unlawful restraint of trade.  On the other hand, Stryker seeks a permanent injunction forbidding DJO to solicit any employee of Stryker—which would constitute an unlawful restraint of trade, unfairly and needlessly restricting the mobility of Stryker's own at-will employees.  (Compl., Prayer for Relief at C.)  Stryker's request for relief plainly overreaches, as the terms of the Non-Competition Agreements Stryker seeks to enforce provide for a restricted period of only one year.  Since Stryker failed to contract for such expansive protections, it is not entitled to such a remedy in equity:

> So far as we have found, it has never been thought actionable to take away another's employee, when the defendant wants to use him in his own business, however much the plaintiff may suffer.  It is difficult to see how servants could get the full value of their services on any other terms; ***time creates no***

28

> *prescriptive right in other men's labor.   If any employer expects so much, he must secure it by contract.*   Harley & Lund Corp. v. Murray Rubber Co., 31 F.2d 932, 934 (2d Cir. 1929), *cert. denied*, 279 U.S. 872, 49 S.Ct. 513, 73 L.Ed. 1007 (1929).
>
> Nobody has ever thought, so far as we can find, that in the absence of some monopolistic purpose every one has not the right to offer better terms to another's employe[e], so long as the latter is free to leave.  The result of the contrary would be intolerable, both to such employers as could use the employe[e] more effectively and to such employe[e]s as might receive added pay.  It would put an end to any kind of competition. *Triangle Film Corp. v. Artcraft Pictures Corp.*, 250 F. 981, 982 (2d Cir. 1918).

*Avtec Indus.*, 205 N.J. Super. at 196 (emphasis added).  The relief requested by Stryker constitutes an unlawful restraint on trade and is thus contrary to public interest.  This Court should not countenance Stryker's attempt to stifle competition in the Indiana labor market by limiting employee mobility through a non-competition injunction that exceeds even the terms of the agreements Stryker drafted.

### d.  The Competitor's Purpose Is at Least in Part to Advance His Interest in Competing with the Other.

Stryker's Complaint specifically alleges that DJO and Supernaw are engaged in a scheme of poaching Stryker's workforce to solicit Stryker customers to switch their business to DJO.  (Compl. ¶ 4.)  As such, this element of the Restatement (Second) of Torts § 768(1) criteria is not disputed by Stryker.

Because all of the requirements of the Restatement (Second) of Torts §

29

768(1) are evident from the allegations in Stryker's Complaint, this Court should grant DJO and Supernaw's Motion to Dismiss pursuant to Rule 12(b)(6) and dismiss Stryker's Complaint with prejudice.

### 5. Stryker's Corporate Raiding Claim (Count I) Should Be Dismissed Because it is Duplicative of its Claims for Tortious Interference and Is Not an Independent Cause of Action.

Stryker's corporate raiding claim (Count I) should be dismissed because it is entirely duplicative of its claims for tortious interference.  Stryker knows this. Indeed, in past lawsuits pending before this Court, Stryker has attempted—and failed—to prosecute a corporate raiding claim because it was duplicative of its claims for tortious interference with contract and prospective economic advantage. *See Howmedica Osteonics Corp.*, 2012 U.S. Dist. LEXIS 162800, at *36-37. Here, Stryker's claims for tortious interference and corporate raiding are virtually identical, and focus on Defendants' alleged disruption of Stryker's relationships with its employees and customers.

Furthermore, to the extent Stryker's claim for corporate raiding relies on conduct that is not subsumed within its tortious interference claims, the corporate raiding claim still fails as there is no authority to suggest that New Jersey recognizes an independent cause of action for "corporate raiding."  As such, this claim should be dismissed.

**6. Stryker's Unfair Competition Claim (Count V) Should Be Dismissed Because it is Duplicative of its Claims for Tortious Interference.**

Stryker's claim for unfair competition against DJO and Supernaw (Count V) should be dismissed because it is duplicative of its claims for tortious interference.

"The common law tort of unfair competition historically has been considered a subspecies of the class of torts known as tortious interference with business or contractual relations." *Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Group, Inc.*, No. A-3714-07T1, 2010 N.J. Super. Unpub. LEXIS 2342, at *26 (N.J. Super. Ct. App. Div. Sept. 23, 2010) (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 1 cmt. g (1995)).  Stated differently, under New Jersey law, "[t]here is no distinct cause of action for unfair competition.  It is a general rubric which subsumes various other causes of action." *C.R. Bard, Inc.*, 561 A.2d at 696.  Accordingly, courts have dismissed unfair competition claims where they are duplicative of claims for tortious interference.  *See Diversified Indus., Inc. v. Vinyl Trends, Inc.*, No. 13-6194, 2014 U.S. Dist. LEXIS 61131, at *19-21 (D.N.J. May 1, 2014) (granting motion to dismiss unfair competition counterclaims with prejudice that were duplicative of tortious interference claim); *Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F. Supp. 747, 786 (D.N.J. 1995) (dismissing claim for unfair competition where court determined that claims for tortious interference and breach of good faith and fair dealing did not withstand

summary judgment); *Sussex*, 2010 N.J. Super. Unpub. LEXIS 2342, at *24-27 (upholding dismissal of unfair competition claim where plaintiff conceded that unfair competition claim was only a subspecies of its tortious interference claim and both claims were grounded on the same facts).

Here, the same allegations underlying Stryker's unfair competition claim are those underlying its claims for tortious interference.  As a result, Count V of Stryker's Complaint should be dismissed.

### D.   Alternatively, Transfer of this Action is Appropriate Under 28 U.S.C. § 1404.

Should the Court decide not to dismiss this action, DJO and Supernaw respectfully request that the Court transfer this case to the United States District Court for the Southern District of Indiana under 28 U.S.C. § 1404(a) because that is the only court where jurisdiction can be properly exercised over all of the parties in a single action.

Section 1404(a) provides a court with broad authority and discretion to transfer a case to another district "where it may have been brought," when doing so is "in the interest of justice" and serves "the convenience of parties and witnesses." 28 U.S.C. § 1404(a); *see also Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973); *Santi v. Nat'l Bus. Records Mgmt., LLC*, 722 F. Supp. 2d 602, 606 (D.N.J. 2010); *Cadapult Graphic Sys., Inc. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000).  In deciding motions to transfer venue, courts consider a variety

of certain private and public interest factors.[4]   Here, both the private and public interest factors weigh in favor of transfer.

As to the private factors, the events giving rise to this action occurred exclusively in Indiana and bear no relationship to New Jersey.[5]   All of the Individual Defendants reside and work in Indiana.  (*See* Compl. t ¶¶ 8-13.)  During their employment with Stryker, the Individual Defendants were responsible for customers in Stryker's North Central Branch, located in Indiana.  (*Id.* ¶ 2.)  The Individual Defendants are alleged to have violated their Stryker agreements by working on behalf of DJO in their former Stryker sales territories in Indiana.  (*Id.* ¶¶ 70 & 72.)  As to DJO, Stryker specifically alleges that DJO's alleged improper

---

[4] The private interest factors include (1) plaintiff's choice of forum; (2) defendant's choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witness; and (6) the location of books and records.  *See Fragola v. Plainville Police Dep't*, No. 15-6281, 2016 U.S. Dist. LEXIS 66550, at *5 (D.N.J. May 20, 2016) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).   The public interest factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  *Id.*

[5] Stryker's choice of forum is entitled to no deference.   The operative facts occurred in Indiana, where the Individual Defendants reside and where Stryker and DJO conduct business.   Furthermore, this case involves a conflicting forum selection clause that mandates Michigan as the appropriate forum to litigate this dispute.  *See Sarkisian*, 2015 U.S. Dist. LEXIS 51420, at *21.  Finally, the Court lacks personal jurisdiction over DJO and Supernaw, and therefore, there is no connection to Stryker's choice of forum and its claims against DJO and Supernaw. *See id.* at *22-23.

conduct was concentrated in Indiana.  (*See id.* ¶ 4 ("Altogether, DJO has targeted, solicited and/or hired at least a dozen Stryker employees, with its recent efforts concentrated in Indiana.").)  It is clear from the allegations in the Complaint that Stryker's claims arose in Indiana, not New Jersey.  *See Allied Old English, Inc. v. Uwajimaya, Inc.*, No. 11-1239, 2012 U.S. Dist. LEXIS 116261, at *11 (D.N.J. Aug. 16, 2012).

Additionally, Indiana is the more convenient forum for both the parties and the witnesses.  Six of the seven named defendants are located in Indiana.  In addition, most of the witnesses, including necessary non-party surgeons, reside in Indiana and are not subject to jurisdiction in New Jersey.[6]  It is unlikely that there is a single witness in New Jersey with information relevant to this case, as all of the alleged conduct occurred in Indiana.  The ability to compel the attendance of witnesses in Indiana strongly weighs in favor of transfer.  And the potential inability of this Court to compel the attendance of these Indiana witnesses is a factor that weighs heavily in favor of transfer.

---

[6] Because non-party witnesses may be compelled to attend only by the subpoena power of federal courts, compulsory process over such non-party witnesses has been referred to as the single most important factor in a 1404(a) analysis and a forum's inability to reach such witnesses is an important factor weighing in favor of transfer.  *See Teleconference Sys. v. Proctor & Gamble Pharms., Inc.*, 676 F. Supp. 2d 321, 333 (D. Del. 2009); *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 590-91 (D.N.J. 2001); *In re Consolidated Parlodel Litig.*, 22 F. Supp. 2d 320, 324 (D.N.J. 1998).

The public factors similarly weigh in favor of transfer.  The primary locus of the dispute is in Indiana as the principal events giving rise to Stryker's claims took place in Indiana and Defendants' alleged improper acts which gave rise to the instant action were directed to employees and customers located in Indiana.  *See Delta Air Lines, Inc. v. Chimet, S.P.A.*, 619 F.3d 288, 300 (3d Cir. 2010) ("In evaluating the public interest factors the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum.").  New Jersey's interest in this dispute is a creature of contract and does not involve any New Jersey citizens.  Indiana has a local interest in deciding this matter in its own forum.  *See Cent. Constr. Mgmt., LLC v. Strongwall Indus., Inc.*, No. 15-7342, 2016 U.S. Dist. LEXIS 20771, at *14 (D.N.J. Feb. 22, 2016).  Furthermore, jury duty should not be imposed on citizens of New Jersey absent an identified public interest in this forum.  *See id.*; *Ferens v. John Deere Co.*, 494 U.S. 516, 529-30 (1990).  Finally, because most of the parties, witnesses and evidence in this action are located in Indiana, it would be easier, more cost-effective, and more economically judicious to proceed with the case there.

The Court's recent decision in *Howmedica Osteonics Corp. v. Sarkisian*, 2015 U.S. Dist. LEXIS 51420 (D.N.J. Apr. 20, 2015) is instructive.  In that case, Stryker sued a number of its former employees (all of whom lived and worked in

California) as well as their new employers, neither of whom were signatories to the Stryker agreements and one of whom was a California company with no connection to New Jersey, alleging nearly identical claims as in this case. *Id.* at *3-7. The Court transferred the case to California under Section 1404(a), finding that transfer was appropriate because of California's overwhelming connection to the case. The Court refused to enforce the New Jersey forum selection clauses because doing so "would lead to palpable inconvenience, ineconomy, and injustice that refutes the intent of the transfer statute" in that it would result in a dividing of a single case into three separate cases, in three different venues (New Jersey, California, and Michigan[7]). *Id.* at *11. The Court refused to keep the case in New Jersey because doing so would be untenable since it would require the Court to, among other things, disregard a conflicting forum selection clause, determine the validity of the New Jersey forum selection clauses, and make a series of factual findings concerning standing, jurisdiction, and venue, all before even addressing the merits of the case. *Id.* at *11-12. The Court concluded that California was the only place where the entire case could be properly litigated, thus rendering transfer appropriate.

Similar to *Sarkisian*, this case is centered in Indiana. Stryker's claims occurred in Indiana and the parties, witnesses, and evidence are located there,

---

[7] Similar to this case, one of the Stryker agreements in the *Sarkisian* case contained a Michigan forum selection clause.

36

including non-party Indiana surgeons over whom this Court lacks compulsory process. Because the operative facts took place in Indiana, Howmedica's selection of its home venue is entitled to little weight. Venue here based solely on the forum selection clauses of Bolinger, Eisterhold, Huebner, and Broecker is inefficient, inconvenient, and wastes judicial resources because it would result in three separate litigations taking place simultaneously in three separate venues–here, New Jersey, Indiana, and Michigan. Keeping this case in New Jersey raises necessary foundational issues of venue and jurisdiction, as well as the conflicting forum selection clause in Davis' agreement. This Court need not incur the expense and time required to determine these preliminary issues when there is an appropriate forum for this case to be heard in its entirety.

For all of these reasons, should the Court decide not to dismiss this case, the Court should grant DJO's and Supernaw's alternative request for transfer.

## IV.    CONCLUSION

For the foregoing reasons, DJO and Supernaw respectfully requests that the Court enter an Order in the form attached hereto dismissing Stryker's Complaint or, in the alternative, transferring this action to the United States District Court for the Southern District of Indiana.

Respectfully submitted,

**BLANK ROME LLP**
*A Pennsylvania LLP*

Dated:  June 15, 2016                  *s/ Eric G. Fikry*
                                       Stephen M. Orlofsky
                                       Eric G. Fikry
                                       New Jersey Resident Partners
                                       Terry M. Henry
                                       Michael A. Iannucci
                                       Rosemary McKenna

                                       *Attorneys for Defendants*
                                       *DJO Global, Inc. and Kywin Supernaw*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned does hereby certify that on this date a true and correct copy of the foregoing Notice of Motion to Dismiss or, Alternatively, Transfer Plaintiff's Complaint, supporting Memorandum of Law and proposed form of Order, was served on all counsel of records via the Court's ECF system.


Dated:  June 15, 2016                    */s/ Rosemary McKenna*
                                         Rosemary McKenna