Galit Kierkut (#034092000)
SILLS CUMMIS & GROSS P.C.
One Riverfront Plaza
Newark, New Jersey 07102
Telephone: (973) 643-7000
Facsimile: (973) 643-6500

A. Richard M. Blaiklock, Admitted *Pro Hac Vice*
Charles R. Whybrew, Admitted *Pro Hac Vice*
LEWIS WAGNER LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN 46202
Telephone: (317) 237-0500
Facsimile: (317) 630-2790

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---------------------------------------------------- x

HOWMEDICA OSTEONICS CORP., a
subsidiary of STRYKER CORPORATION,
a New Jersey corporation,

      Plaintiff,

 - against -

DJO GLOBAL, INC., a California
corporation, Kywin Supernaw, an
individual, Brad Bolinger, an individual,
Jake Eisterhold, an individual, Eric
Huebner, an individual,  Justin Davis, an
individual, and Tim Broecker, an individual.

      Defendants.

---------------------------------------------------- 

**ECF CASE**

Civ. A. No. 2:16-cv-02330-
JMV-JBC

**BRIEF IN SUPPORT OF
JAKE EISTERHOLD'S,
ERIC HUEBNER'S, AND
JUSTIN DAVIS' MOTION
TO DISMISS PLAINTIFF'S
COMPLAINT OR, IN THE
ALTERNATIVE, TRANSFER
VENUE**

**Motion Day: July 18, 2016**

**Oral Argument Requested**

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................................ i

**TABLE OF AUTHORITIES** ............................................................. iii

**INTRODUCTION** ............................................................................. 1

**STATEMENT OF FACTS** ............................................................... 1

**ARGUMENT** ........................................................................................

I.    VENUE IS IMPROPER IN NEW JERSEY .................................... 7

     **A.**    Venue Is Improper in New Jersey ................................. 8

         *1. The Sarkisian case* ................................................... 10

     **B.**    A Forum Selection Clause does not cure improper venue ................................................................ 14

     **C.**    *Atlantic Marine* does not apply ............................. 16

         *1. Magistrate Judge Falk already has determined that Atlantic Marine does not apply* ...................... 17

         *2. The Forum Selection Clauses are Permissive, making Atlantic Marine inapplicable* ........................ 18

     **D.**    Enforcement of the Forum Selection Clause Would Be Unreasonable ...................................................... 23

II.    IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THE CASE TO THE SOUTHERN DISTRICT OF INDIANA ................... 25

     **A.**    Venue Would Be Proper in the Southern District of Indiana ........................................................... 26

i

**B.**     **The Private Interest Factors Are Satisfied** ........................... 27

**C.**     **The Public Interest Factors Are Satisfied** ........................... 31

**III.**   <u>**THE COMPLAINT AGAINST HUEBNER, DAVIS, AND EISTERHOLD SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION**</u> .... 33

**A.**     **Davis** ..................................................................... 35

*1.   The Court Does Not Have General Jurisdiction Over Davis* ............................................... 35

*2.   The Court Does Not Have General Jurisdiction Over Davis* ............................................... 36

**B.**     **Hubner and Eisterhold** ............................................ 38

**IV.**    **EVEN IF THIS COURT DECIDES NOT TO TRANSFER THIS CASE TO INDIANA, IT SHOULD DISMISS THE COMPLAINT BECAUSE IT FAILS TO STATE A CLAIM FOR UNFAIR COMPETITION** . . . . . . . . .38

## TABLE OF AUTHORITIES

**I.**     **<u>Cases</u>**                                                                                          **<u>Page</u>**

*Alexander v. Anthony Int'l*, 341 F.3d 256 (3d Cir. 2003) ............................ 24

*AT&T v. MCI Communications Corp.*, 736 F.Supp. 1294 (D.N.J. 1990) .... 27

*Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568 (2013) .................................................................................*passim*

*Avila Group, Inc. v. Norma J. of California*, 426 F.Supp. 537 (S.D.N.Y. 1977).......................................................................................................... 22

*Besler v. Coluccio,* No. A-1078-10T4, 2012 WL 3822090 (N.J. Super. Ct. App. Div. Sept. 5, 2012) ......................................................................... 20

*Blakey v. Cont'l Airlines, Inc.*, 164 N.J. 38 (2000)...................................... 36

*Burger King v. Rudzewicz*, 471 U.S. 462 (1985).......................................... 36

*Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F.Supp. 747 (D.N.J.1995)............................................................................................ 39

*Control Screening LLC v. Technological Application and Production Co.*, 687 F.3d 163 (3d Cir. 2012)....................................................................... 37

*Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291 (3d Cir. 1994) ...................................................................................... 8, 10

*C.R. Bard, Inc. v. Wordtronics Corp.*, 235 N.J. Super. 168, 561 A.2d 694 (Ch. Div. 1989) ........................................................................................ 39

*Dahl v. United Tech. Corp.*, 632 F.2d 1027 (3d Cir. 1980).......................... 32

*Dawes v. Publish Am. LLC,* 563 Fed. Appx. 117 (3d Cir. Apr. 10, 2014), *reh'g denied* (June 5, 2014), *cert. denied sub nom. Dawes v. Publish Am. LLP*, 135 S. Ct. 1159, 190 L. Ed. 2d 917 (2015) .............................. 17, 19, 20

*Days Inns Worldwide, Inc. v. Ram Lodging, LLC*, No. CIVA 09-2275
(SDW), 2010 WL 1540926 (D.N.J. Apr. 14, 2010) ...................................... 28

*D'Elia v. Grand Caribbean Co.*, No. 09-CV-1707 NLH KMW, 2010 WL
1372027 (D.N.J. Mar. 30, 2010)..................................................................... 19

*Delta Air Lines, Inc. v. Chimet, S.P.A.*, 619 F.3d 288 (3d Cir. 2010) .......... 31

*Dentsply Int'l, Inc. v. Benton*, 965 F. Supp. 574 (M.D. Pa. 1997) .............. 24

*DePuy Synthes Sales, Inc. v. Gill*, No. CIV.A. 13-04474, 2013 WL 5816328
(D.N.J. Oct. 29, 2013).......................................................................... 26, 28

*Driscoll Constr. Co. v. State. Dept. of Transp.*, 371 N.J. Super. 304 (App.
Div. 2004) ...................................................................................................... 21

*Dunne v. Libbra*, 330 F.3d 1062 (8th Cir. 2003) ......................................... 23

*Epsilon Plastics, Inc.  v. Goscin*, No. 05-cv-4935, 2006 WL 776802 (D. N.J.
March 24, 2006) ............................................................................................. 37

*Eubanks v. Filipovich*, No. CIV.A. 12-4299, 2012 WL 6731123 (E.D. Pa.
Dec. 27, 2012)................................................................................................ 37

*Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940 (D.N.J. 1991) ............. 22

*Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962)............................................. 7

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947)............................................ 32

*Harfouche v. Wehbe*, 950 F.Supp.2d 766 (D.N.J. 2013) .............................. 21

*Howmedica Osteonics Corp. v. Sarkisian*, No. CIV.A. 14-3449 CCC, 2015
WL 1780941 (D.N.J. Apr. 20, 2015) ................................................ 10, 13, 18

*Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d
836 (7th Cir. 1981)........................................................................................ 22

*IBEW Local Union No. 102 v. Star Lo Elec.*, 444 Fed. Appx. 603 (3d. Cir.
Sept. 13, 2011) ............................................................................................... 21

*Ikon Office Sols., Inc. v. Rezente*, No. CIV.A. 09-4178, 2010 WL 395955
(E.D. Pa. Feb. 3, 2010).......................................................................... 15, 16

*inno360, Inc. v. Zakta, LLC*, 50 F.Supp.3d 587 (D. Del. 2014) ................... 34

*Int'l Shoe Co.  v. Washington*, 326 U.S. 310 (1945) ................................... 35

*Job Haines Home for the Aged v. Young*, 936 F.Supp. 223 (D.N.J. 1996) .. 32

*John Boutari & Son, Wines and Spirits, S.A. v. Attiki Importers &
Distributors, Inc.*, 22 F.3d 51 (2d Cir. 1994)................................................. 20

*Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995)........*passim*

*Mediterranean Golf, Inc. v. Hirsh*, 783 F.Supp. 835 (D.N.J. 1991)............. 29

*Mellon Bank (East) P.S.F.S. v. Farino*, 960 F.2d 1217 (3d Cir. 1992) ........ 34

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972) ...................... 23, 24

*Nino v. Jewelry Exch., Inc.*, 609 F.3d 191 (3d Cir. 2010) ............................ 24

*Park Inn Int'l, L.L.C. v. Mody Enters.*, 105 F.Supp.2d 370 (D.N.J. 2000) .. 28

*Patterson by Patterson v. FBI*, 893 F.2d 595 (3d Cir. 1990) ....................... 34

*Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197 (3d Cir. 1998) ...... 33

*Radian Guaranty Inc. v. Bolen*, 18 F.Supp.3d 635 (E.D. Pa. 2014)............. 20

*Ramada Worldwide, Inc. v. Bellmark Sarasota Airport, LLC*, No. 05-2309
(HAA), 2006 WL 1675067 (D.N.J. June 15, 2006)................................. 28, 29

*RCI NE. Svcs. Div. v. Boston Edison Co.*, 822 F.2d 199 (1st Cir. 1987) ..... 21

*Remick v. Marfredy*, 238 F.3d 248 (3d Cir. 2001)........................................ 35

*Ricoh Co. Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473 (D.N.J. 1993)............. 31

*Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415 (3d Cir. 1999) ................................................................................................ 21

*Stalwart Capital, LLC v. Warren St. Partners, LLC*, No. CIV. 11-5249 JLL, 2012 WL 1533637 (D.N.J. Apr. 30, 2012) ...................................... 8

*Commons Outlets, L.L.C. v. Chelsea Prop. Grp., Inc.*, No. A-3714-07T1, 2010 WL 3772543 (N.J. Super. Ct. App. Div. Sept. 23, 2010) .................... 39

*Taylor & Francis Grp., PLC v. McCue*, 145 F. Supp. 2d 627 (E.D. Pa. 2001) ..................................................................................... 7

*Teamsters Indus. Emp. Welfare Fund, et al. v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132 (3d Cir. 1993) ........................................................ 22

*Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172 (3d Cir. 2006) ........... 34

*The Business Store, Inc. v. Mail Boxes Etc.*, No. CIV.A. 11-3662 FLW, 2012 WL 525966 (D.N.J. Feb. 16, 2012) ............................................ 24

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61 (3d Cir. 1984) ................................................................................................ 34

*Viking Yacht Co. v. Composites One LLC*, 496 F.Supp.2d 462 (D.N.J. 2007) ............................................................................... 19

*Waste Mgmt., Inc. v. Admiral Ins. Co.*, 138 N.J. 106, 649 A.2d 379 (1994) ................................................................................... 36

*Wilson v. Paradise Vill. Beach Resort And Spa*, 395 N.J. Super. 520, 929 A.2d 1122 (App. Div. 2007) ....................................................... 35

II.   <u>**Statutes and Rules**</u>

28 U.S.C. § 1391(b) ...................................................................... 7, 8

28 U.S.C. § 1404(a) ......................................................................... 25

# INTRODUCTION

This case does not belong in New Jersey.  All of the relevant facts relating to Howmedica Osteonics Corp.'s ("Howmedica") claims against Defendants Justin Davis ("Davis"), Jake Eisterhold ("Eisterhold"), and Eric Huebner ("Huebner"), occurred in Indiana.  Despite foisting the adhesion contract on Mr. Davis that contains a <u>Michigan</u> choice of law and venue provision, Howmedica ignored the purportedly applicable contractual provision and sued Indiana resident-Mr. Davis, in New Jersey.  This heavy handed approach by Howmedica is part of its strategy to hinder free competition through burdensome litigation.  For the reasons that follow, this lawsuit should be DISMISSED, or, in the alternative, transferred to the Southern District of Indiana.

# STATEMENT OF FACTS

Howmedica has offices and business operations throughout the United States including Indiana.  Howmedica designs, manufactures, and markets orthopedic implants for use in reconstructing various joints.  (Doc. 1, ¶¶ 16-17).  Michigan-based Stryker Corporation ("Stryker") is the parent corporation of Howmedica. (*Id.*, ¶ 1; Doc. 2).  Despite being jointly referred to as "Stryker" in the Complaint, Stryker and Howmedica are separate legal entities.  (*Id.*).

Messrs. Huebner, Davis, and Eisterhold live and work in Indiana, where they have been residents and citizens since 1988, 1989, and 1983, respectively.

(Huebner Decl., ¶ 3; Davis Decl., ¶ 3; Eisterhold Decl., ¶ 3).   Huebner's employment with Stryker began on June 22, 2004, as a Reconstructive Sales Representative in the Indiana Branch and, later, the North Central Branch. (Huebner Decl., ¶ 4).   Eisterhold's employment with Stryker began in August 2009, and, on or about January 1, 2011, he was promoted to Reconstruction Sales Representative in the Indiana Branch and, later, the North Central Branch. (Eisterhold Decl., ¶ 4).  Davis' employment with Stryker began on March 12, 2012 as a Reconstructive Sales Associate for the Indiana Branch.   He became a Reconstructive Sales Representative on January 1, 2013 in the Indiana Branch and, later, the North Central Branch.  (Davis Decl., ¶ 4).

Huebner, Davis, and Eisterhold each interviewed with Stryker representatives in Indiana.  (Huebner Decl., ¶ 5; Davis Decl., ¶ 5; Eisterhold Decl., ¶ 5).  After being hired, Stryker presented Huebner, Davis, and Eisterhold with non-compete agreements that they were required to sign in the form provided. (Huebner Decl., ¶ 6; Davis Decl., ¶ 6; Eisterhold Decl., ¶ 6).

On June 22, 2004, Huebner executed an Employee Non-Compete Agreement ("2004 Non-Competition Agreement").  (Huebner Decl., ¶ 6).  The 2004 Non-Competition Agreement required Stryker to pay Huebner if it wanted him to limit his post-employment competitive activities.  (*Id.*, Ex. A, ¶ 3). Additionally, the 2004 Non-Competition Agreement contained a very specific

2

material term:  It could not be changed, modified, or terminated except in writing signed by (i) Mr. Huebner; (ii) Stryker's Vice-President of Sales; and (iii) one of the following: Stryker's Vice-President of Human Resources or its President.  (*Id.*, Ex. A, ¶ 17).

Prior to resigning, Huebner asked Stryker's Human Resources department for a copy of his applicable non-compete.  (Huebner Decl., ¶ 15).  On July 28, 2015, Stryker's "HR Specialist" sent Huebner a copy of the 2004 Non-Competition Agreement as the controlling agreement.  (*Id.*, Ex. B)  Stryker's HR Specialist made no mention of the 2008 Non-Competition Agreement attached to Howmedica's Complaint.  (Huebner Decl., ¶ 16).  Huebner relied on the HR Specialist's representation that the 2004 Non-Competition Agreement controlled in making decisions regarding his employment with Stryker, including the decision to terminate his employment with Stryker.  (*Id.*).

After terminating Huebner's employment with Stryker, Stryker did not provide Huebner with the severance payments described in the 2004 Non-Competition Agreement.  (*Id.*, ¶ 17).  More recently, Howmedica's counsel refused to provide proof that Huebner signed the 2008 Non-Competition Agreement.  (*See* Whybrew Decl., ¶ 4, Ex. A).

Howmedica alleges that, on April 21, 2008, Huebner executed Stryker's form Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation

3

Agreement ("2008 Non-Competition Agreement"). (Doc. 1, ¶ 48). Huebner does not recall reviewing or executing a Non-Competition Agreement in 2008.[1] (Huebner Decl., ¶ 10). The 2008 Non-Competition Agreement is countersigned only by Tim Broecker, General Manager – Indiana, and is not signed, as required by the 2004 Non-Competition Agreement, by Stryker's Vice-President of Sales; and one of the following: Stryker's Vice-President of Human Resources or its President. (Doc. 1-4, p. 8).

On July 10, 2009, and January 3, 2013, Howmedica alleges that Eisterhold and Davis, respectively, executed Stryker's form Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement (Doc. 1, ¶¶ 46-47) (the 2004 and 2008 Non-Competition Agreements and Eisterhold's and Davis' Non-Competition Agreements shall be collectively, the "Non-Competition Agreements"). The Non-Competition Agreements purport to limit Huebner's, Eisterhold's, and Davis' ability to earn a living after separating employment with Stryker by purporting to limit their respective ability to compete and/or solicit business in certain areas for the 12-months following their separation. (Doc. 1-2, §§ 6.1-6.3; Doc. 1-3, §§ 6.1-6.3; Doc. 1-4, §§ 6.1-6.3). The Non-Competition

---

[1] Huebner denies that the 2008 Non-Competition Agreement governs his relationship with Stryker, but, because Howmedica alleges that the 2008 Non-Competition Agreement controls, Huebner, Davis, and Eisterhold will analyze the venue/personal jurisdiction issues under that Agreement, unless specifically noted herein.

Agreements were presented to Huebner, Davis, and Eisterhold in Indiana, and purportedly executed by them in Indiana. (Huebner Decl., ¶ 7; Davis Decl., ¶ 6; Eisterhold Decl., ¶ 6).

In addition to purportedly limiting their ability to compete, Huebner and Eisterhold's Non-Competition Agreements contain forum selection clauses ("Forum Selection Clause") stating:

> any action relating to or arising out of this Agreement **may** be brought in the courts of the State of New Jersey or, if subject matter jurisdiction exists, in the United States District Court for the District of New Jersey in Newark.

(*See, e.g.,* Doc. 1-3, § 8.2) (emphasis added). Those Agreements also contains a New Jersey choice of law provision. (*Id.*). Despite Howmedica alleging (subject to Rule 11) that Davis signed a Non-Competition Agreement with a New Jersey forum selection clause (Doc. 1, ¶ 63), the Davis Non-Competition Agreement attached to the Complaint contains a Michigan forum selection clause and Michigan choice of law provision. (Doc. 1-2, § 8.2).

The Non-Competition Agreements were drafted exclusively by Stryker, and Huebner, Eisterhold, and Davis were required to sign them. (Huebner Decl., ¶¶ 6-9; Davis Decl., ¶¶ 6-8; Eisterhold Decl., ¶¶ 6-8). Huebner, Eisterhold, and Davis were not provided with the opportunity to negotiate any of the terms of the Non-Competition Agreements, and they were unable to have an attorney review them. (*Id.*). Additionally, at no time during the interview process or thereafter did

5

anyone inform Davis, or Eisterhold that, by signing the Non-Competition Agreements, they would be required to bring or defend lawsuits in New Jersey (Michigan for Davis) and be subjected to foreign law, even though they lived and worked in Indiana. (Davis Decl., ¶ 9; Eisterhold Decl., ¶ 9).

Stryker alleges that Davis, Eisterhold, and Huebner acted in concert with the individual co-defendants and DJO Global, Inc. to leave Stryker and unfairly compete with Howmedica. (Doc. 1, ¶ 1).   That is not the reason they left Stryker. They left Stryker for a myriad of reasons including being subjected to hostile and unprofessional working conditions and including unilateral commission reductions (which substantially reduced the income sales representatives could earn). (Huebner Decl., ¶¶ 11-13; Davis Decl., ¶¶ 10-12; Eisterhold Decl., ¶¶ 10-12). Regardless, why they left Stryker will be a contested issue in this case.  All of the evidence on this issue is centered in Indiana.

Huebner, Davis, and Eisterhold each resigned their employment with Stryker in February, 2016.  (Id.).  From the beginning of their employment until their last day with Stryker, Huebner, Davis, and Eisterhold performed all their substantive sales work in Indiana, except for some insignificant training and incidental business trips to New Jersey.  (Huebner Decl., ¶ 14; Davis Decl., ¶ 13; Eisterhold Decl., ¶ 13).  All their customers were located in Indiana, and all the product they sold was sold in Indiana.  (Id.).  They never worked in or recall taking direction

from any person located in New Jersey. (*Id.*). Huebner, Davis, and Eisterhold each believe that most, if not all, of the witnesses in this case are located in Indiana, and they are unaware of any witnesses located in New Jersey. (Huebner Decl., ¶ 18; Davis Decl., ¶ 15; Eisterhold Decl., ¶ 15).

## ARGUMENT[2]

### I.    VENUE IS IMPROPER IN NEW JERSEY.

Where jurisdiction is founded solely on diversity of citizenship, there are only three proper venues where the case can be filed:  (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred [], or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391(b).  In assessing venue under § 1391, plaintiff's residence is irrelevant.  *Taylor & Francis Grp., PLC v. McCue*, 145 F. Supp. 2d 627, 629-30 (E.D. Pa. 2001).  Under 28 U.S.C. § 1406(a), if venue is not proper, district courts are required either to dismiss or transfer to a proper forum.  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962).

---

[2] Huebner, Davis, and Eisterhold join in and incorporate by reference any motions to dismiss or motion to transfer venue filed by any co-defendant.

## A.    Venue Is Improper in New Jersey.

For venue to remain in this Court, New Jersey must be a proper venue under 28 U.S.C. § 1391(b).  Section 1391(b)(1) does not confer venue in New Jersey because Huebner, Davis, and Eisterhold do not reside in New Jersey.  Section 1391(b)(2) also does not apply because a "substantial part" of the events giving rise to plaintiff's claims did not occur in New Jersey, and any stray occurrences in New Jersey do not approach the threshold of substantiality.  "The test for determining venue is not the defendant's 'contacts' with a particular district, but rather the location of those 'events or omissions giving rise to the claim.'" *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). Events or omissions that have only "some tangential connection" with the dispute are insufficient to support venue under this subsection. *Id.* at 294.  "Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Id.*

"For breach of contract of claims, courts considering substantial events or omissions take into account where the contract was negotiated, executed, performed, and breached." *Stalwart Capital, LLC v. Warren St. Partners, LLC*, No. CIV. 11-5249 JLL, 2012 WL 1533637, at *4 (D.N.J. Apr. 30, 2012).  Finally, Section 1391(b)(3) does not apply because there is another district where this action could have been brought – the Southern District of Indiana.

8

The events purportedly giving rise to Howmedica's claims occurred in Indiana. The Non-Competition Agreements were negotiated, executed, performed, and allegedly breached in Indiana. (Huebner Decl., ¶¶ 6-9, 14; Davis Decl., ¶¶ 6-8, 13; Eisterhold Decl., ¶¶ 6-8, 13; Doc. 1). In addition, Huebner, Davis, and Eisterhold sold all products in Indiana to Indiana customers, and they did not sell any products to any customers in New Jersey. (Huebner Decl., ¶ 14; Davis Decl., ¶ 13; Eisterhold Decl., ¶ 13).

Additionally, Howmedica alleges that Huebner, Davis, and Eisterhold acted in concert with the other defendants to leave Stryker en masse for DJO. (Doc. 1, ¶ 1). However, Huebner, Davis, and Eisterhold did not conspire to leave Stryker for any nefarious reason. They left Stryker, in part, because of the hostile and unprofessional working conditions they faced (*see supra*). The hostile and unprofessional working conditions occurred in Indiana and were committed by Stryker employees who work and reside in Indiana. As a result of all of these facts, venue is proper in Indiana because the events purportedly giving rise to Howmedica's claim occurred there.

Howmedica likely will argue that venue is proper in New Jersey because (a) Huebner, Davis, and Eisterhold traveled to New Jersey for training, business meetings, etc.; (b) Howmedica is headquartered in New Jersey; (c) their paychecks, bonuses, reimbursable expenses, and other benefits were processed and

9

approved for payment in New Jersey; and (d) Howmedica's injury allegedly occurred in New Jersey. Concerning, (a), (b), and (c), those facts are, at best, tangentially connected to this breach of contract action and are, therefore, insufficient to make venue proper in this Court. *See Cottman*, 36 F.3d at 294.

Concerning (d), Howmedica's alleged injury did not occur in New Jersey. The ultimate injury Howmedica suffered, if any, would be in Indiana, and not New Jersey. There is no dispute here that the alleged conduct took place in Indiana. Nor is there any dispute that Huebner's, Davis', and Eisterhold's performed their work in Indiana and allegedly solicited customers that reside in Indiana. Howmedica cannot demonstrate that it lost any business in New Jersey as a result of any of Huebner's, Davis', or Eisterhold's conduct. As a result, Howmedica cannot demonstrate that it suffered any harm in New Jersey.

*1. The Sarkisian case.*

Magistrate Judge Falk, in a case strikingly similar to this one, has questioned whether venue is proper in this Court, and determined that venue should be transferred. In *Howmedica Osteonics Corp. v. Sarkisian*, No. CIV.A. 14-3449 CCC, 2015 WL 1780941, at *4 (D.N.J. Apr. 20, 2015),[3] Howmedica, relying on forum selection clauses that were either identical or substantially similar to the

_____

[3] Howmedica has sought review of the *Sarkisian* decision, but, to date, no decision has been reached.

ones at issue in this case, filed a complaint against California sales representatives alleging, among other things, breach of non-competition/non-solicitation agreements. The California individuals moved to dismiss for improper venue and lack of personal jurisdiction, or, in the alternative, to transfer venue to the Northern District of California, arguing that, in spite of the forum selection clauses, venue was not proper in New Jersey because all events surrounding the case occurred in California.

The California individuals, much like here, asserted that (a) the agreements at issue in that case were negotiated, executed, performed, and allegedly breached in California; (b) all the product they sold was in California to California customers; (c) that one of them had a Michigan forum selection clause; (d) the forum selection clauses were not valid; and (e) key witnesses were located in California, not New Jersey. Howmedica argued in response that none of the above mattered because the forum selection clauses governed and that individual with the Michigan forum selection clause was still bound by the New Jersey forum selection clause because he was "closely related" to the other individuals with New Jersey forum selection clauses.

Magistrate Judge Falk agreed with the California individuals. In the reaching this decision, he wrote:

> Everything about this contentious case is in California—all the
> parties are there; the causes of action arose there; the evidence

11

is there; the important witnesses are there—including at least 7 truly essential non-party witnesses not subject to compulsory process in New Jersey (orthopaedic surgeons, whose availability is difficult even where they live).

The California connections to this case are obvious beyond dispute . . . [b]ut there is an obstacle here, which causes pause but ultimately is not insurmountable. The barrier to automatic transfer is that 4 out of the 7 defendants apparently signed forum selection clauses purportedly consenting to venue in New Jersey. As stated, one of the other defendants signed a forum selection clause naming Michigan as the exclusive forum for any action . . . [t]he obstacle is a line of precedent reinforced by a recent Supreme Court case that instructs that in a transfer analysis valid forum selection clauses are entitled to special considerations and are generally to be enforced. The Court fully acknowledges and respects that precedent. However, enforcing the purported (New Jersey) forum selection clauses (whose validity is vigorously disputed) doesn't make sense and would lead to palpable inconvenience, ineconomy, and injustice that refutes the intent of the transfer statute.

*     *     *

[T]rying to squeeze the whole case in New Jersey is untenable. It would require the Court to disregard the law of jurisdiction and venue and then make a series of factual findings where there is no obvious basis to do so. For example, keeping the case in New Jersey would require the Court to disregard the Michigan forum selection clause for no reason other than Plaintiff wants it that way. Also, it would require finding venue was proper in New Jersey in the first place, which is disputed and highly questionable. It would require finding that the New Jersey forum selection clauses are valid, though Defendants claim they were procured by misrepresentations and are unenforceable contacts of adhesion. It would require finding that Plaintiff has standing to enforce the forum selection clauses even though it is not clear who the clauses were entered into with. It would require finding that there is personal jurisdiction in New Jersey over certain Defendants when it seems clear that

12

there is not. It would require finding the "closely related" doctrine somehow overrides the jurisdiction and venue problems. Deciding this multitude of fact disputes would likely require jurisdictional and validity discovery and likely necessitate hearings with the Court making credibility findings. And all of this before even talking about the merits. And after all that, there are still the California surgeons with no connection to New Jersey who may be the most important fact witnesses in the case. Respectfully, it is this Court's opinion that the Supreme Court's endorsement of the enforceability of valid forum selection clauses does not require this convoluted exercise in this particular case. Yes, forum selection clauses are entitled to deference. But they're not automatic and absolute. The Court concludes that circumstances here constitute the type of exceptional circumstances in which transfer may be appropriate, even assuming a valid forum selection clause. Justice and reason dictate that this case proceed in California, and therefore, for the reasons set forth below, Defendants' alternative motions to transfer will be granted.

*Id*, No. CIV.A. 14-3449 CCC, 2015 WL 1780941, at *3-4.

This case is strikingly similar. As in *Sarkisian*:

- The Non-Competition Agreements were negotiated, purportedly executed, performed, and allegedly breached in Indiana, not New Jersey (Huebner Decl., ¶¶ 6-9, 14; Davis Decl., ¶¶ 6-8, 13; Eisterhold Decl., ¶¶ 6-8, 13; Doc. 1);

- Huebner, Davis, and Eisterhold sold products in Indiana, to Indiana customers, and did not sell any products to New Jersey customers (Huebner Decl., ¶ 14; Davis Decl., ¶ 13; Eisterhold Decl., ¶ 13);

- Davis has a Michigan, not New Jersey, Forum Selection Clause (Doc. 1-2, § 8.2);

- Most, if not all, witnesses are in Indiana, not New Jersey (Huebner Decl., ¶ 18; Davis Decl., ¶ 14; Eisterhold Decl., ¶ 14);

13

- Huebner, Davis, and Eisterhold each contest the validity of the Non-Competition Agreements because (a) they are classic contracts of adhesion and (b) in Huebner's case, the 2004 Non-Competition Agreement governs his post-separation relationship with Stryker and, yet insisting he not compete, Stryker breached that agreement by failing to make required severance payments (*supra*); and

- The Non-Competition Agreements are by and between Huebner, Davis, and Eisterhold and Stryker, not Howmedica, which calls into question whether Howmedica has standing to enforce those agreements (*infra*).

The Indiana connections to this case are obvious.  Like in *Sarkisian*, there are numerous factual questions (*e.g.*, the validity of the Non-Competition Agreements and the Forum Selection Clauses, whether Davis is "closely related" to Huebner and Eisterhold so as to make the New Jersey Forum Selection Clause applicable to him, Howmedica's standing to enforce the Non-Competition Agreements, etc.) that will have to be decided in this case **before** reaching the merits of this case.  Following the reasoning in *Sarkisian*, venue is improper in this Court despite the Forum Selection Clauses.

**B.    A Forum Selection Clause does not cure improper venue.**

Howmedica asserts that venue is proper as to Huebner, Davis, and Eisterhold because Forum Selection Clauses in their Non-Competition Agreements allegedly require them to consent to the jurisdiction of state or federal courts in New Jersey (while at the same time avoiding the fact that Davis' Forum Selection Clause

provides for venue in Michigan).   (Doc. 1, ¶ 15).   However, a forum selection clause cannot make an otherwise improper venue proper under § 1391.

In a diversity case "whether venue is proper rests on the federal venue statute, not the existence of a forum selection clause." *Ikon Office Sols., Inc. v. Rezente*, No. CIV.A. 09-4178, 2010 WL 395955, at *2 (E.D. Pa. Feb. 3, 2010). Venue is proper "so long as the requirements of § 1391(b) are met, irrespective of any forum-selection clause...." *Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 578 (2013).   A forum selection clause cannot vest proper venue in a forum that is otherwise improper under § 1391.   It can only "represent[] the parties' agreement as to the **most proper** forum."   *Id.* at 580; *see also Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995).   The U.S. Supreme Court, in *Atlantic Marine*, observed, "the structure of the federal venue provisions confirms that they alone define whether venue exists in a given forum." 134 S. Ct. at 578.

*IKON* is on point.   There, the plaintiff employer, an Ohio corporation with a principal place of business in Pennsylvania and an office in California, sought to enforce restrictive covenants against two former employees who lived and worked in California.   The agreements the employer sought to enforce contained forum selection clauses which authorized the employer to bring a lawsuit in the U.S. District Court for the Eastern District of Pennsylvania, which it did. *IKON*, 2010

WL 395955, at *1. Defendants moved to transfer to California or in the alternative to dismiss for lack of personal jurisdiction. *Id.* at *2. Not reaching the question of personal jurisdiction, the court focused its attention to the issue of venue. *Id.* at *3-4, holding that venue was improper in Pennsylvania and that venue could not be made proper simply by inserting a forum selection clause in a contract making it so. *Id.* Because venue was improper in Pennsylvania, the court transferred the case to the Eastern District of California, despite the forum selection clause.

## C.   *Atlantic Marine* Does Not Apply.

Howmedica will likely argue that the Forum Selection Clauses in Huebner's, Davis', and Eisterhold's Non-Competition Agreements are enforceable even if venue is otherwise improper under § 1391, incorrectly asserting that *IKON* has been implicitly overturned by *Atlantic Marine*. But there, the U.S. Supreme Court held only that: (1) a forum selection clause may be enforced only by a motion to transfer under § 1404(a); (2) a mandatory forum selection clause represents the parties' agreement as to "the **most proper** forum," carries with it a presumption of enforceability; and (3) the district court, when deciding whether to transfer a case in the face of a mandatory forum selection clause, should not consider private interest factors. 134 S. Ct. at 581. The Supreme Court did not hold that a district court should enforce a forum selection clause containing a forum that is otherwise

16

improper under § 1391.[4]   Indeed, the Third Circuit in *Dawes v. Publish Am. LLP*,

interpreting *Atlantic Marine*, held that the presumption of enforceability set out in

*Atlantic Marine* does not apply to a permissive forum selection clause. 563 Fed.

Appx. 117, 118, n.3 (3d Cir. Apr. 10, 2014), *reh'g denied* (June 5, 2014), *cert.*

*denied sub nom. Dawes v. Publish Am. LLP*, 135 S. Ct. 1159, 190 L. Ed. 2d 917

(2015).

       *1.   Magistrate Judge Falk already has determined that <u>Atlantic Marine</u> does*
          *not apply.*

In *Sarkisian*, Howmedica, as it will likely do in this case, asserted that

*Atlantic Marine* applied and made venue proper because of the forum selection

clauses.    Magistrate Judge Falk disagreed and found venue in New Jersey

improper.   As part of its analysis, Magistrate Judge Falk concluded that *Atlantic*

*Marine* did not apply, stating:

> This case is not *Atlantic Marine*. Indeed, there are many distinctions
> between *Atlantic Marine* and what is presented here, including:
>
> - Defendants are not seeking to enforce a forum selection
>   provision. Rather, the Plaintiff—Howmedica—filed suit in this
>   District suggesting that some of the purported forum selection
>   clauses made jurisdiction and venue proper here, arguably
>   contrary to *Atlantic Marine*.

---

[4] Indeed, the Court was not required to do so because the *Atlantic Marine* forum
selection clause required the parties to litigate their disputes in Virginia, *id.* at 573,
where venue was otherwise proper under § 1391, even in the absence of the forum
selection clause.

- *Atlantic Marine* was based on the presumption that the forum selection clause was valid, *id.* at 581 n. 5. Here, the validity of the forum selection provisions are contested.
- Unlike *Atlantic Marine*, there are extensive disputes about the propriety of venue and jurisdiction, especially as to Defendant GSO, which has no contractual relationship with Plaintiff and is being sued here based on a strained theory of "closely-related" parties.

*Atlantic Marine* does not compel a specific result in this case. It simply requires that, if valid, and venue in the chosen forum is independently correct, then the forum selection clause be given due weight in the transfer analysis. The case does not overrule case law that recognizes that a district court has wide discretion to transfer venue, including a transfer contrary to a forum selection provision. Nor does it overrule case law Defendants rely on in support of transfer, like *Ikon Office Solutions, Inc. v. Rezente*, 2010 U.S. Dist. LEXIS 10096, 2010 WL 395955 (E.D.Pa. Feb. 3, 2010).

*Sarkisian*, No. CIV.A. 14-3449 CCC, 2015 WL 1780941, at *6 (citation omitted).

The situation is similar here.

As in *Sarkisian* and contrary to *Atlantic Marine*, Howmedica, and not the defendants, are seeking to enforce the Forum Selection Clauses, and Huebner, Davis, and Eisterhold dispute whether the Forum Selection Clauses apply.   In addition, as in *Sarkisian*, there are material disputes regarding venue and jurisdiction in this case.  Following *Sarkisian*, *Atlantic Marine* does not govern this case, and the Forum Selection Clauses cannot make venue proper in New Jersey where venue is otherwise improper under § 1391.

2.  *The Forum Selection Clauses are Permissive, making <u>Atlantic Marine</u> inapplicable.*

18

Even if this Court chooses not to follow *Sarkisian* and even if Howmedica somehow has standing to enforce the Forum Selection Clauses contained in the agreements between Stryker and Huebner, Davis, and Eisterhold,[5] *Atlantic Marine* does not apply because the Forum Selection Clauses in all the agreements are permissive only.   As the Third Circuit has observed, "a permissive clause authorizes jurisdiction in a designated forum but does not prohibit litigation elsewhere," whereas "[a] mandatory clause...dictates an exclusive forum for litigation under the contract." *Dawes*, 563 Fed. App'x at 118 (internal quotation marks omitted).   "The general rule in cases containing forum selection clauses is that when only one jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make

---

[5] Howmedica cannot enforce the Forum Selection Clauses against Huebner, Davis, and Eisterhold because it is not a party to their contracts with Stryker Corporation. In the Third Circuit, a non-signatory party may not enforce a forum selection clause in a contract unless that party is a third-party beneficiary of the contract or is closely related to the contractual relationship. *D'Elia v. Grand Caribbean Co.*, No. 09-CV-1707 NLH KMW, 2010 WL 1372027, at *3 (D.N.J. Mar. 30, 2010) (citations omitted).   The Complaint does not allege that Howmedica is a third-party beneficiary of the Non-Competition Agreements or that it is a closely-related entity of Stryker, which is fatal to Howmedica's claim. *Id.*   Howmedica likely will argue that it can enforce the Non-Competition Agreements because the definition of "Stryker" includes any of Stryker's subsidiaries, of which Howmedica is one. But, related corporate entities typically cannot enforce contractual provisions (including choice of law provisions) to which they are not parties. *Viking Yacht Co. v. Composites One LLC*, 496 F.Supp.2d 462, 466 (D.N.J. 2007).

jurisdiction exclusive." *John Boutari & Son, Wines and Spirits, S.A. v. Attiki Importers & Distributors, Inc.*, 22 F.3d 51, 52 (2d Cir. 1994).

In *Dawes*, the Third Circuit held that a forum selection clause, which provided that "Author and Publisher irrevocably submit to the jurisdiction of any Maryland State or Federal court sitting in the City of Frederick over any suit related to this agreement," was permissive only "because the forum selection clause – which did not make jurisdiction in Maryland exclusive – was permissive, not mandatory." *Id*. 563 Fed. Appx. at 118.  *See also, e.g., Besler v. Coluccio*, No. A-1078-10T4, 2012 WL 3822090, at *3-4 (N.J. Super. Ct. App. Div. Sept. 5, 2012) (Forum selection clause stating "Make[r] consents to the personal jurisdiction of the Courts of the Commonwealth of Pennsylvania for Philadelphia and Montgomery Counties, including the jurisdiction of the United States District Court for the Eastern District of Pennsylvania" deemed permissive and not mandatory.).

Howmedica will argue that the Huebner and Eisterhold Forum Selection Clauses in the form agreement is "mandatory," because the first sentence contains the word "exclusive."  However, the same Forum Selection Clause <u>also</u> states that disputes arising out of the agreement "**may**" be brought in New Jersey, thus rendering the Forum Selection Clause permissive. *See, e.g., Radian Guaranty Inc. v. Bolen*, 18 F.Supp.3d 635, 650 (E.D. Pa. 2014) (finding permissive a forum

selection clause providing that, "any legal proceeding arising out of this paragraph *may* be brought in the United States District Court for the Eastern District of Pennsylvania") (emphasis in original).    At the very least, the Forum Selection Clause is ambiguous because it is subject to two reasonable interpretations. *Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc.*, 198 F.3d 415, 421 (3d Cir. 1999).  As a result, strictly construing the Forum Selection Clauses against Stryker Corporation (as proffered by Howmedica), the drafter of these form agreements, is proper.  *Driscoll Constr. Co. v. State. Dept. of Transp.*, 371 N.J. Super. 304, 318 (App. Div. 2004) ("Where an ambiguity exists in the contract allowing at least two reasonable alternative interpretations, the writing is strictly construed against the drafter.").  Since the Forum Selection Clause is, at best, ambiguous, it did not act as valid consent to jurisdiction in New Jersey.  *Harfouche v. Wehbe*, 950 F.Supp.2d 766, 771 (D.N.J. 2013).

In determining whether the Forum Selection Clauses are permissive, the Court should look to Howmedica's course of conduct because "where the plain meaning of a contract phrase does not spring unambiguously from the page or from the context, its proper direction becomes one for the factfinder, who must ferret out the intent of the parties." *IBEW Local Union No. 102 v. Star Lo Elec.*, 444 Fed. Appx. 603, 608-09 19092 (3d. Cir. Sept. 13, 2011) (*quoting RCI NE. Svcs. Div. v. Boston Edison Co.*, 822 F.2d 199, 202 (1st Cir. 1987)).  Here, Howmedica's

21

actions in bringing this lawsuit against Davis in New Jersey even though the Davis agreement contains an otherwise identical Forum Selection Clause, save for the insertion of Michigan rather than New Jersey, is powerful evidence that Howmedica views the Forum Selection Clauses in these form agreements as permissive. *Teamsters Indus. Emp. Welfare Fund, et al. v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993) (conduct of parties will reflect their understanding of contract's meaning). The only reasonable explanation why Howmedica does not seek to enforce the Forum Selection Clause in Davis' agreement and sue him in Michigan is that Howmedica knows that the Forum Selection Clauses are permissive.[6]

The Huebner and Eisterhold Forum Selection Clauses are also permissive. Howmedica may argue that the word "shall" sufficiently connotes that the Forum

---

[6] Howmedica cannot otherwise explain why the FCS in Davis' form agreement did not require it to bring its suit against Davis in Michigan. Howmedica appears to "cherry pick," that is, seek enforcement of favorable provisions in the Stryker form agreement, ignoring other less favorable provisions. The law prohibits this tactic; Howmedica may not seek to enforce favorable contract terms while "cavalierly dismissing" those provisions it deems "detrimental to [its] cause of action." *Fregara v. Jet Aviation Bus. Jets*, 764 F. Supp. 940, 953 (D.N.J. 1991). *Accord Hughes Masonry Co. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) (holding that a party seeking to enforce a contract "cannot rely on the contract when it works to its advantage, and repudiate it when it works to its disadvantage"); *Avila Group, Inc. v. Norma J. of California*, 426 F.Supp. 537, 540 (S.D.N.Y.1977) ("To allow (defendant) to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.").

Selection Clauses mandatorily require litigation of this lawsuit in New Jersey. *Dawes*, however, compels a different result. Writing after *Atlantic Marine*, the Third Circuit observed that a forum selection clause is not mandatory simply because it specifies only one jurisdiction without some further language indicating the parties' intent to make jurisdiction exclusive. The Circuit cited with approval *Dunne v. Libbra*, 330 F.3d 1062 (8th Cir. 2003), which held permissive a forum selection clause stating "this agreement <u>shall</u> be governed by and construed and enforced in accordance with the laws of the State of Illinois, and the parties consent to jurisdiction to [sic] the state courts of the State of Illinois." *Id.* at 1063. The Eighth Circuit held that the word "shall" did not make the forum selection clause mandatory because the forum selection clause itself "did not use the words "exclusive," "only," "must," or any other terms that might suggest exclusivity. *Id.* at 1064. With no plain language basis to support a finding of exclusivity, a court does not view "the forum selection clause as ambiguous...the forum selection clause is permissive." *Id.*

**D.    Enforcement of the Forum Selection Clause Would Be Unreasonable.**

Forum selection clauses should not be enforced where enforcement is shown by the resisting party to be unreasonable under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). The *Bremen* Court indicated that such factors as "fraud, undue influence or overweening bargaining power" would

23

justify refusing to enforce the clause. 407 U.S. at 12. Here, enforcement of the Forum Selection Clauses would be unreasonable under the circumstances.

The Forum Selection Clauses are both procedurally and substantively unconscionable. They are procedurally unconscionable because they are, by definition, classic contracts of adhesion; the Indiana individuals were presented with agreements, prepared and presented by a party with excessive bargaining power on a take-it-or-leave-it basis with insufficient opportunity to read their contents, consult an attorney, or have any meaningful choice in their terms (Huebner Decl., ¶¶ 6-9, 14, 19; Davis Decl., ¶¶ 6-8, 13, 15; Eisterhold Decl., ¶¶ 6-8, 13, 15). *See, e.g.*, *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 201-02 (3d Cir. 2010); *Dentsply Int'l, Inc. v. Benton*, 965 F. Supp. 574, 577 (M.D. Pa. 1997) (Forum selection clause not enforceable where "employer-employee relationship [was] so inherently unequal" the employment agreement was unenforceable.")

The Forum Selection Clauses are also substantively unconscionable because they contain "terms that unreasonably favored [Howmedica] to which [defendants] d[id] not truly assent." *Alexander v. Anthony Int'l*, 341 F.3d 256, 265 (3d Cir. 2003). Howmedica foisted upon Huebner, Davis, and Eisterhold Forum Selection Clauses that unreasonably favored it and "materially diminish[ed] the rights guaranteed" by that law which truly impacts the parties and this dispute: Indiana law. *See The Business Store, Inc. v. Mail Boxes Etc.*, No. CIV.A. 11-3662 FLW,

24

2012 WL 525966, at *5 (D.N.J. Feb. 16, 2012).   Enforcing the Forum Selection

Clauses under the circumstances is not reasonable.

## II.   IN THE ALTERNATIVE, THIS COURT SHOULD TRANSFER THE CASE TO THE SOUTHERN DISTRICT OF INDIANA.

Even if this Court concludes that the Forum Selection Clauses are

enforceable, this action should be transferred to the Southern District of Indiana.

Transfer is proper pursuant to 28 U.S.C. § 1404(a), and the Southern District of

Indiana is a district where jurisdiction can be exercised over all of the parties.

When reviewing a motion to transfer, a court should consider "all relevant

factors to determine whether on balance the litigation would more conveniently

proceed and the interests of justice better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879.   On a motion to transfer pursuant to § 1404(a), the Court

must undertake a "flexible and individualized analysis," balancing the factors set

forth in the statute as well as a number of other case-specific factors, involving

both private and public interest factors outlined in *Jumara*, 55 F. 3d at 879-80.

The private interest factors include:   (1) "plaintiff's forum preference," (2)

"defendant's forum preference," (3) "whether the claim arose elsewhere," (4) "the

convenience of the parties as indicated by their relative physical and financial

condition," (5) "the convenience of the witnesses - but only to the extent that the

witnesses may actually be unavailable for trial in one of the fora," and (6) "the

location of books and records (similarly limited to the extent that the files could

not be produced in the alternative forum." *Id.* at 880 (internal citations omitted). The public interest factors include: (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) "the relative administrative difficulty in the two fora resulting from court congestion," (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80 (internal citations omitted).

**A.    Venue Would Be Proper in the Southern District of Indiana.**

As a threshold matter, the Court must determine whether the transferee district would have personal jurisdiction over defendants and if venue would be proper in that proposed alternate forum. *See Jumara*, 55 F.3d at 879; *DePuy Synthes Sales, Inc. v. Gill*, No. CIV.A. 13-04474, 2013 WL 5816328, at *5 (D.N.J. Oct. 29, 2013). Here, venue would be proper in the United States District Court for the Southern District of Indiana, which would also have personal jurisdiction over all of the defendants. In this regard, Huebner, Davis, and Eisterhold live and work in Indiana.[7] (Huebner Decl., ¶ 3; Davis Decl., ¶ 3; Eisterhold Decl., ¶ 3). All the customers alleged to have been unlawfully solicited are in Indiana, as are all

---

[7] The same is true with respect to individual co-defendants, Kywin Supernaw, Brad Bolinger, and Tim Broecker.

26

the witnesses and potential documents.  (Huebner Decl., ¶¶ 14, 18; Davis Decl., ¶¶ 13-14; Eisterhold Decl., ¶¶ 13-14; Doc. 1).  In addition, the Stryker employees who created the unprofessional and hostile working environment (which was, in part, one of the reasons that each left Stryker) are located in Indiana as well.  (*Id.*).

To the extent that the law permitted enforcement of the non-solicitation provisions at all, those provisions prohibit solicitation <u>only</u> in the Indiana territory where Huebner, Davis, and Eisterhold worked while employed by Stryker. Howmedica maintains a branch office in Indianapolis, Indiana.  Accordingly, there is no doubt that at least "a substantial part" of the events underlying Howmedica's claims occurred in the Southern District of Indiana and, as such, transfer there is proper.

## B.    The Private Interest Factors Are Satisfied.

Because *Atlantic Marine* does not apply the Court should consider the private interest factors.  Those factors favor transfer.  First, Howmedica's choice of forum should not be respected because it is wholly improper under § 1391.  To the extent that Howmedica is seeking to enforce the Stryker agreements against Huebner, Davis, and Eisterhold, then Michigan, where Stryker Corporation is based, and not New Jersey, should be considered the "home state" and thus, Howmedica's choice of forum should be afforded less deference.  *See AT&T v. MCI Communications Corp.*, 736 F.Supp. 1294, 1306 (D.N.J. 1990) ("Where the

27

operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference."). Second, Huebner, Davis, and Eisterhold - all citizens of Indiana - would rather litigate in the Southern District of Indiana. (Huebner Decl., ¶ 19; Davis Decl., ¶ 15; Eisterhold Decl., ¶ 15). This factor weighs in favor of transfer. *Gill*, No. CIV.A. 13-04474, 2013 WL 5816328, at *7. The Forum Selection Clauses are not waivers because a forum selection clause does not constitute a waiver of a party's right to claim a transferee forum as the party's preferred, convenient forum. *See Days Inns Worldwide, Inc. v. Ram Lodging, LLC*, No. CIVA 09-2275 (SDW), 2010 WL 1540926, at *6 (D.N.J. Apr. 14, 2010); *Ramada Worldwide, Inc. v. Bellmark Sarasota Airport, LLC*, No. 05-2309 (HAA), 2006 WL 1675067, at *3 (D.N.J. June 15, 2006).

The third factor - where the claims arose - supports transfer because Indiana is the center of gravity of the dispute, events, and transactions. *See Park Inn Int'l, L.L.C. v. Mody Enters.*, 105 F.Supp.2d 370, 377-78 (D.N.J. 2000). More specifically, in disputes involving contracts, "a court should consider where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." *Gill*, 2013 WL 5816328, at *8. The terms of the agreements were discussed and purportedly agreed to by Huebner, Davis, and Eisterhold in Indiana; the agreements were executed by them in Indiana; they were hired to perform as sales representatives in Indiana; the agreements, if enforced,

would prevent them from soliciting Howmedica customers or otherwise competing with Howmedica in Indiana; the alleged contractual breaches either occurred or will occur in Indiana when and if they solicit Howmedica's clients or compete with Howmedica; and the relief sought would prevent the Indiana individuals from soliciting Indiana clients or otherwise competing in Indiana.  Whatever ties to New Jersey Howmedica may cite stem from Huebner's, Davis', and Eisterhold's performance of their contractual obligations in Indiana.  *See Mediterranean Golf, Inc. v. Hirsh*, 783 F.Supp. 835, 849-50 (D.N.J. 1991) ("Any meetings Hirsh may have had and any payments Hirsh received in New Jersey were consequences of her performing her contractual obligations in France.").  This factor weighs strongly in favor of transfer.[8]

Fourth, the parties' relative physical and financial conditions also favor transfer to the Southern District of Indiana.  Huebner, Davis, and Eisterhold, salespersons who live in Indiana, have limited financial resources.  All have provided supporting Affidavits that they lack financial ability to "meaningfully participate" in a case being litigated 700 miles from home, and to do so would be unfair and cause them prejudice.  (Huebner Decl., ¶ 19; Davis Decl., ¶ 15;

---

[8] In addition, when ruling on a request to transfer venue, the Court must consider all of the claims at issue in the pending action. *Ramada Worldwide, Inc*, No. 05-2309 (HAA), 2006 WL 1675067, at *3.  The non-contractual tort claims are not subject to the Forum Selection Clauses.  Because the events associated with those claims occurred in Indiana, this factor weighs in favor of transferring venue.

29

Eisterhold Decl., ¶ 15).  It is more convenient and financially reasonable for them to litigate in Indiana.  (*Id.*).  Howmedica does not and cannot allege that it has inadequate resources to litigate this dispute in Indiana.  Howmedica and its affiliates have litigated cases all over the nation.

As to the fifth factor, transfer is appropriate here for the convenience of witnesses.  This factor is to be considered "only to the extent that the witnesses may be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879.  As part of their defense, Huebner, Davis, and Eisterhold will argue that the agreements, and the non-competition and non-solicitation provisions therein, should not be enforced against them because it is unconscionable and overbroad, that there is lack of consideration because Stryker and Howmedica breached the agreements by, among other things, subjecting them to a hostile and unprofessional work environment, and reduced their pay, and that any customers Stryker lost were caused, not by Huebner's, Davis', and Eisterhold's solicitation, but by Stryker Corporation's or Howmedica's own conduct.

As identified in Huebner's, Davis', and Eisterhold's Declarations, the witnesses to their defenses are located in Indiana.  In contrast, there are no known witnesses located in New Jersey who have any meaningful testimony regarding issues raised in this action.  No Howmedica or Stryker Corporation representative that Huebner, Davis, and Eisterhold dealt with during their employment is based in

30

New Jersey. *See Ricoh Co. Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 484 (D.N.J. 1993) (noting that it was significant that plaintiff had "failed to submit by affidavit the names of any witnesses - even employee witnesses - in New Jersey"). In a situation where venue in New Jersey would require both parties and witnesses to travel, "it certainly makes sense to conduct a trial...where only one party and witnesses have to travel rather than where both parties have to travel." *Ricoh*, 817 F. Supp. at 484 (internal citation omitted).

Sixth, the private factor regarding the location of the relevant documents and records also favors transfer to the Southern District of Indiana because all relevant documents are located in Indiana and the transportation of documents to New Jersey would be so unduly burdensome or expensive as to prevent their production.

**C.    The Public Interest Factors For Transfer Are Satisfied.**

Even if *Atlantic Marine* applies, the public interest factors weigh in favor of Huebner, Davis, and Eisterhold. When weighing the public interest factors under §1404(a), the Third Circuit has held that a district court "must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of the conduct to a plaintiff's chosen forum." *Delta Air Lines, Inc. v. Chimet, S.P.A.*, 619 F.3d 288, 300 (3d Cir. 2010). Here, the relevant public interest factors and "the locus of the alleged culpable conduct," weigh in favor of transferring the case to

the Southern District of Indiana; the forum with the greater interest in this litigation.

First, the State of New Jersey has <u>no</u> <u>interest</u> in the outcome of this dispute; although Howmedica is based in New Jersey, no events or transactions occurred in New Jersey. In contrast, the State of Indiana has tremendous interest in having its citizens gainfully employed, free from oppressive and unconscionable restraints and unlawful behavior, and in having contracts negotiated, executed and performed within its borders enforced (or not enforced, depending on the circumstances). Indiana has a "local interest in deciding local controversies at home." Equally important, portions of this case will be tried before a jury and, as noted by the Third Circuit, "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Dahl v. United Tech. Corp.*, 632 F.2d 1027, 1032 (3d Cir. 1980) (*quoting Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)); *see also Job Haines Home for the Aged v. Young*, 936 F.Supp. 223, 233 (D.N.J. 1996) ("[H]aving determined that New Jersey has little connection to this litigation, it would be an improper burden to encumber the citizens of New Jersey with jury duty in this matter.").

Second, the respective courts' dockets likewise favor a transfer to the Southern District of Indiana. A more expeditious resolution of this dispute will be had there. The District of New Jersey is considerably more congested. For the

twelve-month period ending March 31, 2014, there were 7,853 civil cases pending in this District, as compared to 2,309 cases in the Southern District of Indiana. (*See* Federal Judicial Caseload Statistics 2015, Table C-1 (available at http://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2015-tables, last accessed on June 15, 2016)).  During the same period, the median time interval from filing to disposition was 36.4 months in the District of New Jersey, compared to 27.3 months in the Southern District of Indiana.  (*See* Federal Judicial Caseload Statistics 2015, Table C-5 (available at http://www.uscourts.gov/statistics-reports/federal-judicial-caseload-statistics-2015-tables last accessed on June 15, 2016)).   After weighing the public interest factors, the scales tip decidedly in favor of transferring this case to the Sothern District of Indiana.

**III.   THE COMPLAINT AGAINST HUEBNER, DAVIS, AND EISTERHOLD SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION.**

A federal court may exercise personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. *Pennzoil Prods. Co. v. Colelli & Assocs.*, 149 F.3d 197, 200 (3d Cir. 1998).  This Court cannot exercise personal jurisdiction over Huebner, Davis, and Eisterhold because there exist no "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and

substantial justice." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006).  This Court lacks both "specific" and "general" jurisdiction.

"When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Mellon Bank (East) P.S.F.S. v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).  Unlike Rule 12(b)(6), Rule 12(b)(2) does not limit the scope of review to the face of the pleadings; rather, the Court may also consider affidavits and additional evidence. *Patterson by Patterson v. FBI*, 893 F.2d 595, 603-04 (3d Cir. 1990).  Once a defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating facts establishing a basis for the exercise of jurisdiction, namely (1) statutory basis for exercising jurisdiction; and (2) minimum contact with the forum state. *inno360, Inc. v. Zakta, LLC*, 50 F.Supp.3d 587, 592 (D. Del. 2014).   Howmedica thus must present "'competent evidence' demonstrating that Huebner, Davis, and Eisterhold have the requisite minimal contacts with the forum to warrant the exercise of personal jurisdiction over the defendant." *Patterson*, 893 F.2d at 603-04.  Bald assertions and legal conclusions are insufficient. *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir.1984) (rejecting plaintiff's "bald, self-serving statement" concerning the defendants' contacts with the forum).

Courts must also determine whether jurisdiction exists over each claim brought against the defendant because it is possible that a court will have jurisdiction as to some, but not all, of the claims. *See Remick v. Marfredy*, 238 F.3d 248, 255 (3d Cir. 2001). As discussed below, this Court does not have personal jurisdiction over Davis on any of Plaintiff's claims nor over Huebner nor Eisterhold once the Forum Selection Clauses are vitiated.

**A.   Davis.**

*1.   The Court Does Not Have General Jurisdiction Over Davis.*

"Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]." *Int'l Shoe Co.  v. Washington*, 326 U.S. 310, 317 (1945). Even "continuous activity of some sorts within a state is not enough to support [general jurisdiction]." *Id.* at 318. "[This] standard for establishing general jurisdiction is 'fairly high,' and requires that the defendant's contacts be of the sort that approximate physical presence." *Wilson v. Paradise Vill. Beach Resort And Spa*, 395 N.J. Super. 520, 528, 929 A.2d 1122, 1127 (App. Div. 2007). Howmedica cannot satisfy this requirement.

Besides training and incidental business trips, Davis never conducted substantive sales business for Stryker in New Jersey. (Davis Decl., ¶ 13) All his customers were in Indiana, and all the product he sold was in Indiana. (*Id.*).

During his time with Stryker, Davis never reported to or recalls taking direction from anyone located in New Jersey. (*Id.*). As a result, Davis' lack of meaningful contacts with the State of New Jersey clearly do not rise to the level of "continuous and systematic" as due process requires.

2.     *The Court Does Not Have Specific Jurisdiction Over Davis*

A court has specific jurisdiction over a defendant only where the "cause of action arises directly out of a defendant's contacts with the forum state." *Waste Mgmt., Inc. v. Admiral Ins. Co.*, 138 N.J. 106, 119, 649 A.2d 379, 385 (1994). "In the context of specific jurisdiction, the minimum contacts inquiry must focus on the relationship among the defendant, the forum, and the litigation." *Blakey v. Cont'l Airlines, Inc.*, 164 N.J. 38, 67 (2000).   Absent territorial presence in the forum, "it is essential that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefit and protection of its laws." *Waste Mgmt., Inc.*, 138 N.J. at 120.  The unilateral activities or actions of a plaintiff are not enough. *Blakey*, 164 N.J. at 67.   In determining whether to exercise specific jurisdiction in a breach of contract case, judges must examine "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Burger King v. Rudzewicz*, 471 U.S. 462, 479 (1985).   Specific jurisdiction obtains only when a defendant's contacts with the forum were

"instrumental in either the formation or the breach of the contract." *Control Screening LLC v. Technological Application and Production Co.*, 687 F.3d 163, 167 (3d Cir. 2012).

There is no basis for specific jurisdiction over Davis. The Complaint does not even allege specific jurisdiction. The reason is obvious: Davis never sold product for Stryker in New Jersey and his purported misconduct was exclusively based in Indiana and did not arise from any activity by Davis within New Jersey. *Epsilon Plastics, Inc. v. Goscin*, No. 05-cv-4935, 2006 WL 776802, at *3-4 (D. N.J. March 24, 2006) (no specific jurisdiction existed over a out-of-state employee who visited New Jersey for a job interview but worked out of Texas and had no clients in New Jersey); *Eubanks v. Filipovich*, No. CIV.A. 12-4299, 2012 WL 6731123, at *5 (E.D. Pa. Dec. 27, 2012) (finding requisite purposeful availment lacking by California resident). Further, the party with whom he contracted, Stryker Corporation, is based in Michigan.

Davis has not purposefully availed himself of the privilege of conducting activities within the State of New Jersey. Howmedica cannot satisfy the first prong of the inquiry required to exercise specific personal jurisdiction over Davis or any of the other defendants.

**B.    Huebner and Eisterhold.**

For the same reasons this Court does not have personal jurisdiction over Davis on any of Plaintiff's claims, it does not have personal jurisdiction over Huebner or Eisterhold because the Forum Selection Clauses in their agreements are not enforceable.  Additionally, besides training and incidental business meetings, Huebner or Eisterhold never conducted substantive sales business for Stryker in New Jersey.  (Huebner Decl., ¶ 14; Eisterhold Decl., ¶ 13).  All their customers were in Indiana, and all the product they sold was in Indiana.  (*Id.*).  During their time with Stryker, Huebner or Eisterhold never reported to or recall taking direction from anyone located in New Jersey.  (*Id.*).  As a result, their lack of meaningful contacts with the State of New Jersey clearly do not rise to the level of "continuous and systematic" as due process requires.  Finally, as with Davis, the Complaint does not allege specific jurisdiction against Huebner or Eisterhold.

**IV.    EVEN IF THIS COURT DECIDES NOT TO TRANSFER THIS CASE TO INDIANA, IT SHOULD DISMISS THE COMPLAINT BECAUSE IT FAILS TO STATE A CLAIM FOR UNFAIR COMPETITION.**

Stryker's claim for unfair competition against Huebner, Davis, and Eisterhold (Count V) should be dismissed because it is duplicative of its claims for tortious interference.

"The common law tort of unfair competition historically has been considered a subspecies of the class of torts known as tortious interference with

38

business or contractual relations." *Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Grp., Inc.*, No. A-3714-07T1, 2010 WL 3772543, at *9 (N.J. Super. Ct. App. Div. Sept. 23, 2010) (*citing* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 1 cmt. g (1995)).  Stated differently, under New Jersey law, "[t]here is no distinct cause of action for unfair competition.  It is a general rubric which subsumes various other causes of action." *C.R. Bard, Inc. v. Wordtronics Corp.*, 235 N.J. Super. 168, 172, 561 A.2d 694, 696 (Ch. Div. 1989).  Accordingly, courts have dismissed unfair competition claims where they are duplicative of claims for tortious interference. *See Coast Cities Truck Sales, Inc. v. Navistar Int'l Transp. Co.*, 912 F.Supp. 747, 786 (D.N.J.1995) (dismissing claim for unfair competition where court determined that claims for tortious interference and breach of good faith and fair dealing did not withstand summary judgment); *Sussex Commons Outlets, L.L.C.*, 2010 WL 3772543, at *9–10 (upholding dismissal of unfair competition claim where plaintiff conceded that unfair competition claim was only a subspecies of its tortious interference claim and both claims were grounded on the same facts).

Here, the same allegations underlying Stryker's unfair competition claim are those underlying its claims for tortious interference.  As a result, Count V of Stryker's Complaint should be dismissed.

Respectfully submitted,


SILLS CUMMIS & GROSS P.C.



By: /s/ Galit Kierkut
    Galit Kierkut (#034092000)
    One Riverfront Plaza
    Newark, New Jersey  07102
    Telephone:  (973) 643-7000
    Facsimile:  (973) 643-6500

    A. Richard M. Blaiklock
    *Admitted Pro Hac Vice*
    Charles R. Whybrew
    *Admitted Pro Hac Vice*
    LEWIS WAGNER, LLP
    501 Indiana Avenue, Suite 200
    Indianapolis, IN  46202
    Telephone:  (317) 237-0500
    Facsimile:  (317-630-2790
    *Attorneys for Defendants Jake*
    *Eisterhold,*
    *Eric Huebner and Justin Davis*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on June 15, 2016, I electronically filed the foregoing, Brief in Support of Motion to Dismiss Plaintiff's Complaint, or, in the Alternative, to Transfer Venue, via the Court's CM/ECF system.

Jay W. Cho
SEYFARTH SHAW LLP
620 Eight Avenue
New York, NY 10018-1405
*Attorney for Plaintiff HOWMEDICA*
*OSTEONICS CORP., a subsidiary of*
*STRYKER CORPORATION, a New*
*Jersey Corporation*

Michael D. Wexler
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, IL 60603
*Attorney for Plaintiff HOWMEDICA*
*OSTEONICS CORP., a subsidiary of*
*STRYKER CORPORATION, a New*
*Jersey Corporation*

Lynn A. Kappelman
Dawn Mertineit
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 300
Boston, MA 02210-2028
*Attorneys for Plaintiff HOWMEDICA*
*OSTEONICS CORP., a subsidiary of*
*STRYKER CORPORATION, a New*
*Jersey Corporation*

Eric Fikry
Rosemary McKenna
BLANK ROME, LLP
301 Carnegie Center, 3rd Floor
Princeton, NJ 08540
*Attorneys for Defendant DJO,*
*GLOBAL, INC.*

Nicole Wyll
Shelly Ward
DJO, LLC
1430 Decision Street
Vista, CA 92081
*Attorneys for Defendant DJO,*
*GLOBAL, INC.*

By:       /s/ Galit Kierkut_____
          Galit Kierkut (#034092000)

          SILLS CUMMIS & GROSS P.C.
          One Riverfront Plaza
          Newark, New Jersey  07102
          Telephone:  (973) 643-7000
          Facsimile:  (973) 643-6500

          A. Richard M. Blaiklock
          Charles R. Whybrew
          LEWIS WAGNER, LLP
          501 Indiana Avenue, Suite 200
          Indianapolis, IN  46202
          Telephone:  (317) 237-0500
          Facsimile:  (317-630-2790