Andrew Constantine II (AC 1118)
Onofrio de Gennaro (007375)
Lina M. Carreras (LC 4184)
MARON MARVEL BRADLEY &
ANDERSON LLC
75 Montgomery Street, Suite 200
Jersey City, New Jersey 07302
Telephone: 201-369-0600
Facsimile: 201-369-0800

Lisa C. Sullivan (*admitted pro hac vice*)
Laura B. Bacon (*admitted pro hac vice*)
NIXON PEABODY LLP
70 West Madison Street, Suite 3400
Chicago, Illinois 60602
Telephone: 312-977-4400
Facsimile: 312-977-4405

*Attorneys for Defendant Tim Broecker*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HOWMEDICA OSTEONICS CORP., a Subsidiary of STRYKER CORPORATION, a New Jersey corporation, | : : : : | Civ. A. No.: 2:16-cv-02330-JMV-JBC |
| Plaintiff, | : : | Judge John Michael Vazquez Magistrate Judge James B. Clark III |
| -against- | : : | |
| DJO GLOBAL, INC., a California corporation, KYWIN SUPERNAW, an individual; BRAD BOLINGER, an individual; JAKE EISTERHOLD, an ERIC HUEBNER, an individual; JUSTIN DAVIS, an Individual; and TIM BROECKER, an individual, | : : : : : : : : | **BRIEF IN SUPPORT OF RULE 12(b)(2) AND 12(b)(6) DEFENDANT TIM BROECKER'S MOTION TO DISMISS OR, IN THE ALTERNATIVE TRANSFER VENUE** |
| Defendants. | : : : : | **ORAL ARGUMENT REQUESTED Motion Date: July 18, 2016** |

Dated: June 15, 2016

## **Table of Contents**

Introduction ...................................................................................................1

Relevant Factual Background ........................................................................2

    A.   Facts Relevant to Rule 12(b)(6) Motion .......................................2

    B.   Facts Relevant to Rule 12(b)(2) Motion and Alternative Motion to Transfer Venue .........................................................................................4

Argument.......................................................................................................8

    A.   The Claims Against Broecker Should Be Dismissed for Failure to State a Claim .............................................................................................8

        1.   Applicable Legal Standard .....................................................8

        2.   Stryker Fails to State a Claim for Breach of Contract .......................10

            a.   Stryker Does Not Plead a Plausible Claim Against Broecker.....10

            b.   The Restrictive Covenants Are Overbroad and Unenforceable..13

                i.   The Non-Disclosure Clause is Overbroad and Unenforceable.................................................14

                ii.   The Non-Compete and Non-Solicitation Clauses are Overbroad and Unenforceable.............................17

        3.   Stryker Fails to State a Claim for Tortious Interference....................19

        4.   Stryker Fails to State a Claim for Unfair Competition ......................21

    B.   The Claims Against Broecker Should Be Dismissed for Lack of Personal Jurisdiction and/or Improper Venue ...........................................24

    C.   In the Alternative, This Case Should Be Transferred to the U.S. District Court for the Southern District of Indiana .................................24

Conclusion ..................................................................................................27

**Table of Authorities**

Page(s)

**FEDERAL CASES**

*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas,*
    134 S.Ct. 568 (2013)................................................................................25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2007)...............................................................8, 9, 11, 12, 20

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...................................................................8, 9, 11, 12

*CDW LLC v. NETech Corp.,*
    2013 WL 786448 (S.D. Ind. Feb. 7, 2013) ..........................................20

*Dayhoff Inc. v. H.J. Heinz Co.,*
    86 F.3d 1287 (3d Cir. 1996)…………………………………….............5

*Dayrit v. Memorial Hosp. of Salem,*
    2012 WL 1987096 (D.N.J. June 5, 2012)............................................20

*Diversified Indus., Inc. v. Vinyl Trends, Inc.,*
    2014 WL 1767471 (D.N.J. May 1, 2014)............................................22

*Fowler v. UPMC Shadyside,*
    578 F.3d 203 (3d Cir. 2009) ...............................................................11

*Howmedica Osteonics Corp. v. Sarkisian,*
    2015 WL 1780941 (D.N.J. Apr. 20, 2015)...........................25, 26, 27

*IDT Corp. v. Touro Coll.,*
    376 Fed. Appx. 245 (3d Cir. 2010)......................................................13

*Ingris v. Borough of Caldwell,*
    2015 WL 3613499 (D.N.J. June 9, 2015).......................................9, 21

*Lindenberg v. Arrayit Corp.,*
    2014 WL 3854078 (D.N.J. Aug. 6, 2014). ..........................................20

*Medispec, Ltd. v. Chouinard,*
    133 F.Supp.3d 771 (D.Md. 2015)........................................................13

*Nortec Communications, Inc. v. Lee-Llacer*,
    548 F.Supp.2d 226 (E.D. Va. 2008). ................................................................13

*North Jersey Media Group, Inc. v. Bergen Newspaper Group, LLC*,
    2013 WL 195451 (D.N.J. Jan. 18, 2013)..........................................................20

*Nubenco Enterp., Inc. v. Inversiones Barberena, S.A.*,
    963 F. Supp. 353 (D.N.J. 1997) .......................................................................19

*Phillips v. County of Allegheny*,
    515 F.3d 224 (3d Cir. 2007) ............................................................................12

*Pietrangelo v. NUI Corp.*,
    2005 WL 1703200 (D.N.J. July 20, 2005) ..............................................9, 10, 11

*Richards Mfg. Co. v. Thomas & Betts Corp.*,
    2005 WL 2373413 (D.N.J. Sept. 27, 2005)........................................14, 15, 16

*Santiago v. Warminster Twp.*,
    629 F.3d 121 (3d Cir. 2010) .........................................................................9, 23

*Share Corp. v. Momar Inc.*,
    2011 WL 284273 (E.D. Wis. Jan. 26, 2011). ..................................................13

*Shaw v. Housing Auth. Of Camden*,
    2012 WL 3283402 (D.N.J. Aug. 10, 2012) ........................................................9

*Sussex Commons Outlets, LLC v. Chelsea Prop. Group, Inc.*,
    2010 WL 3772543 (D.N.J. Sept. 23, 2010)................................................22, 23

**STATE CASES**

*C.R. Bard, Inc. v. Wordtronics Corp.*,
    561 A.2d 694 (N.J. Super. Ct. 1989) ........................................................22, 24

*Durakool, Inc. v. Mercury Displacements Industr., Inc.*,
    422 N.E.2d 680 (Ind. Ct. App. 1981) ..............................................................22

*Feisher v. Univ. of Evansville*,
    755 N.E.2d 589 (Ind. 2001) ............................................................................22

*Furno v. Citizens Ins. Co. of Am.*,
    592 N.E.2d 1137 (Ind. Ct. App. 1992) ............................................................20

*Karlin v. Weinberg*,
  77 N.J. 408, 390 A.2d 1161 (1978) ...................................................................18

*Levee v. Beeching*,
  729 N.E.2d 215 (Ind. Ct. App. 2000) ................................................................20

*Raven v. A.Klein & Co., Inc.*
  195 N.J. Super. 209 (App. Div. 1984) ................................................................14

*Solari Indus., Inc. v. Malady*,
  55 N.J. 571, 264 A.2d 53 (1970) ..........................................................14, 16, 17

*The Community Hospital Group, Inc. v. More, M.D.*,
  183 N.J. 36 (2005) ......................................................................................15, 18

*Whitmyer Bros. Inc. v. Doyle*,
  58 N.J. 25 (1971) ..........................................................................14, 15, 16, 17

## FEDERAL STATUTES

28 U.S.C. § 1404(a) .........................................................................................1, 25

## RULES

Fed. R. Civ. P. 8(a).......................................................................................9, 10, 11

Fed. R. Civ. P. 12(b)(2)............................................................................................4

Fed. R. Civ. P. 12(b)(6)........................................................................................2, 13

**Introduction**

Broecker should not be part of this lawsuit. Stryker says this case is about a "targeted raiding of its employees" that began in February 2016, but this simply does not apply to Broecker. Stryker laid Broecker off more than a year ago as part of a reduction in force. The restrictive covenants he is accused of breaching expired on May 15, 2016. And, according to Stryker, Broecker did not join DJO until that one-year period ended. Stryker makes few allegations specific to Broecker, choosing instead to lump him in with the other defendants so as to sweep him up in a wide net.

The claims against Broecker should be dismissed. First, the Complaint fails to state a viable claim against Broecker. Stryker alleges that Broecker did not accept a competitive position until "his non-compete obligations expire[d] in May 2016," yet nevertheless accuses him of breaching restrictive covenants, interfering with customers, and unfairly competing. Stryker's accusations are long on "information and belief," and short on detail. The one fact Stryker does plead— that Broecker supposedly attended surgeries or sales calls with DJO representatives where he was "selling non-competitive products"—simply isn't wrongdoing.

Second, the restrictive covenants Stryker seeks to impose are so overbroad that they are unenforceable. Alternatively, this case should be transferred to Indiana pursuant to 28 U.S.C. § 1404(a), where all the individual defendants reside and the alleged "corporate raiding" occurred.

Stryker purports to want to protect its customer relationships. If Stryker was so interested in keeping Broecker's "valuable customer relationships," the solution was easy: it should not have laid him off. But, now that his non-compete has expired, Broecker is permitted to accept a position with DJO, and is permitted to compete, and he should not be forced to defend against claims of wrongdoing based on Stryker's unsupported suspicions.

**Relevant Factual Background**

**A.**    **Facts Relevant to Rule 12(b)(6) Motion.**

Broecker started with Stryker in 2000 as General Manager of the Indiana Branch. (Compl. ¶ 35.) In October 2011, he moved to the position of Key Accounts Manager, still in Indiana. (*Id*.) The Key Accounts Manager role allegedly provides access to non-public information about "customer preferences." (*Id*. ¶ 26.) On May 15, 2015, as part of a reduction in force, his position was eliminated and so he was terminated. (*Id*. ¶¶ 35, 64, 66.)

When he began with Stryker, Broecker signed a "Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement" (the "Broecker Agreement"). (*Id*. ¶ 49.) As pertains to this motion, the Broecker Agreement contained the following relevant provisions:

- A non-compete provision, purporting to restrict Broecker for 12 months after his Stryker employment ended. (Compl. Ex. E § 6.3.) This provision expired

2

on May 15, 2016.

- A customer non-solicitation provision, also purporting to restrict Broecker for 12 months after his Stryker employment ended. (*Id.* § 6.2.) This provision similarly expired on May 15, 2016.

- A non-disclosure provision, with no end date. (*Id.* § 5.1.) The definition of "Confidential Information" protected by the clause is extensive. (*Id.* § 2.3.)

- A choice of law and venue provision, which provides that the "Agreement, the parties' performance hereunder and the relationship between them shall be governed by, construed and enforced in accordance with the laws of the State of New Jersey;" that litigation "between Stryker and me relating to this Agreement will take place exclusively in New Jersey;" and that jurisdiction and venue are proper in New Jersey. (*Id.* § 8.2.)

Stryker does <u>not</u> allege that Broecker joined DJO in May 2015 when Stryker laid him off—not the next day, the next week, or even the next month. Stryker alleges that Broecker planned to join DJO after his one-year restrictive covenants ended: "Broecker publically acknowledged that he will accept a position with DJO as soon as his non-compete obligations expire in May 2016." (Compl. ¶ 70.)

Stryker makes only two allegations about Broecker before his non-compete expired. First, he "attended meetings with DJO managers" and with other defendants. (*Id.*) Second, Stryker alleges that he and DJO sales representatives

3

attended sales calls and surgeries "with doctors in his former Stryker territory under the guise that they are solely selling non-competitive products." (*Id.*)

Aside from those few facts, Stryker resorts to speculation that lumps Broecker in with the other defendants. "Upon information and belief," Broecker violated the restrictive covenants in the Broecker Agreement. (*Id.* ¶¶ 72-73.) Stryker does not explain the basis for its belief. Also "upon information and belief," Broecker is "using confidential Stryker information to solicit Stryker customers." (*Id.* ¶ 74.) Stryker does not identify any particular information. And while Stryker alleges it has "lost significant business" since the <u>other</u> defendants joined DJO, it does not mention Broecker. (*Id.* ¶ 78.) These allegations amount to unsupported legal conclusion.

## B.  **Facts Relevant to Rule 12(b)(2) Motion and Alternative Motion to Transfer Venue.**

The plaintiff here is "Plaintiff Howmedica Osteonics Corp., a subsidiary of Stryker Corporation ('Stryker')." (Compl. ¶ 1.) That subsidiary allegedly is a New Jersey corporation with its principal place of business in New Jersey. (*Id.* ¶ 6.) Parent Stryker Corporation, however, is a Michigan corporation. (Doc. 2.)

Broecker, and the other five individual defendants, are all Indiana residents. (Compl. ¶¶ 8-13.) All the defendants worked for Stryker within Indiana. (*Id.* ¶¶ 29, 31-35.) For which Stryker entity each one worked is a bit murky. Broecker's

Agreement lists his "Employer" as "Stryker Orthopaedics," but also defines "Stryker" to mean "collectively, Stryker Corporation [the Michigan entity], the Employer identified above," and all their related entities.[1] (Compl. Ex. E p. 1.) The other defendants' agreements are similarly confusing:

- Defendant Davis's agreement is with "Employer: Stryker Ortho-Indiana Branch." (Compl. Ex. B p. 1.) His "Governing Law and Venue" provision specifies that Michigan law will apply and that all litigation will take place in Michigan—*i.e.*, where Stryker Corporation is located. (*Id*. § 8.2.)

- Defendant Eisterhold's agreement is with "Employer: Stryker," which could mean Stryker Corp. or Howmedica Osteonics Corp. (Compl. Ex. C p. 1.)

- Defendant Huebner's agreement is with "Employer: Indiana." (Compl. Ex. D p. 1.)

- Defendant Bolinger's agreement is, like Broecker's, with "Employer: Stryker Orthopaedics." (Compl. Ex. A p. 1.)

All the agreements have the same definition of "Stryker" that includes the "Employer," "Stryker Corporation," and all related entities. This use of the

---

[1]   The name of the Plaintiff in this case, Howmedica Osteonics Corp., does not appear in Broecker's Agreement. This at least raises a question as to whether Plaintiff even has standing to enforce the Agreement (and its forum selection clause) against Broecker. *See, e.g. Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1297 (3d Cir. 1996) (holding that non-signatory corporate affiliates could not enforce arbitration and forum selection clauses contained in the agreement at issue).

umbrella term "Stryker" creates confusion.

Broecker's work, specifically his work for Stryker, and personal life are and always have been strongly rooted in Indiana. Broecker's only connections to New Jersey were infrequent, ad hoc trips for meetings with Stryker personnel.

Broecker resides in Fishers, Indiana, where he shares custody of his three children. (*See* Broecker Affidavit, Ex. 1, at ¶ 3.) He grew up in Indiana and lived there during his entire employment with Stryker. (*Id.* ¶¶ 3, 8.) He never sought employment or held a job within New Jersey. (*Id*. ¶ 4.) For Broecker to have to defend himself in this case in New Jersey would be a great inconvenience. (*Id*. ¶ 15.) If Broecker were required to travel to New Jersey for depositions, court hearings, and trial, it would require Broecker to leave his children, his job, and his elderly parents who rely on him and to incur travel expenses. (*Id.*)

Moreover, Broecker has not purposefully availed himself of the benefits of the state of New Jersey. He never lived in, owned property in, or paid income or real estate taxes to the state of New Jersey. (*Id*. ¶ 4.) To the best of his knowledge, he has never invested in a company located or incorporated in New Jersey; he does own shares in a Stryker entity but believes these are of the Michigan-based parent company. (*Id*.) Broecker has not travelled to New Jersey for personal reasons. (*Id*. ¶ 5.) And other than the infrequent trips made for Stryker explained below, Broecker never travelled to New Jersey for business. (*Id*. ¶¶ 5, 12.) He has never

6

availed himself of the courts of New Jersey and, other than this case, was never sued in any court in New Jersey. (*Id*. ¶ 6.)

Broecker's employment with Stryker revolved around Indiana. As General Manager for the state of Indiana from 2000-October 2011, he supervised Stryker's sales and operations in Indiana. (*Id.* ¶ 9.) All of the Stryker employees that he supervised were based in Indiana and performed their job duties for Stryker within Indiana. (*Id.*) None were in New Jersey. (*Id.*) When he was in the Key Accounts Manager role from October 2011 until May 2015, Broecker called upon surgeons located in Indiana who were <u>not</u> doing business with Stryker. (*Id.* ¶ 10.) None of his assigned accounts were in New Jersey. (*Id.*)

While Stryker was headquartered in New Jersey, Broecker's job duties were not. (*Id.* ¶ 11.) His sales territory never covered New Jersey nor did his customer list ever include New Jersey or doctors who practiced there. (*Id.*) He never made sales visits or calls to doctors who lived or worked in New Jersey nor did he have any reporting responsibility to any Stryker employees located in New Jersey. (*Id.*)

The *only* connection his job had with the state of New Jersey was that from time to time, Broecker would travel with an Indiana doctor to New Jersey to introduce that doctor to Stryker personnel. (*Id.* ¶ 12.) These ad hoc trips occurred on average four times a year. (*Id.*)

Broecker has no recollection of reading the "Governing Law and Venue"

provision of his Agreement before signing it nor did Stryker ever discuss this provision with Broecker when he was asked to sign the Agreement. (*Id*. ¶ 14.)

**<u>Argument</u>**

Stryker's "group pleading" allegations do not state a claim against Broecker; instead, Stryker attempts to lump him together with all the other defendants with unsupported allegations of "unfair" or "unjustifiable" acts. The restrictive covenants are overbroad and unenforceable as a matter of law. The tortious interference claim fails because Stryker fails to allege unlawful conduct. The unfair competition claim is not a stand-alone cause of action and, even if it were, it is duplicative of the tortious interference claim. In the alternative, this case should be transferred to Indiana, where the individual defendants live and where the conduct complained of occurred.

**A.   <u>The Claims Against Broecker Should Be Dismissed for Failure to State a Claim.</u>**

**1.   <u>Applicable Legal Standard.</u>**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

To determine the sufficiency of a complaint under *Twombly* and *Iqbal*, courts in the Third Circuit follow a three-step process:

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675, 679). In conducting this analysis, courts are not bound to accept as true legal conclusions couched as factual allegations, statutory buzz words, or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and alterations omitted); *Twombly*, 550 U.S. at 556, 564.

When a plaintiff sues multiple defendants, it must plead facts sufficient to state a claim against each one. "Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." *Shaw v. Housing Auth. Of Camden*, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012).[2] A complaint is deficient when it "fails to differentiate between the defendants" and "instead lumps all of the defendants together and accuses every defendant" of wrongdoing. *Pietrangelo v. NUI Corp.*, 2005 WL 1703200, at *10 (D.N.J. July 20, 2005). "[L]ump[ing] multiple, unrelated defendants together without any explanation regarding how, if at all, specific defendants were involved with the alleged conduct" amounts to "impermissibly vague group pleading." *Ingris v.*

---

[2] Copies of all cited unpublished decisions are attached hereto as Group Exhibit 2.

*Borough of Caldwell*, 2015 WL 3613499, at \*5 (D.N.J. June 9, 2015). Group pleading renders allegations "so general that they fail to put each defendant on notice of the claims against them." *Pietrangelo*, 2005 WL 1703200, at \*10.

### 2. Stryker Fails to State a Claim for Breach of Contract.

#### a. Stryker Does Not Plead a Plausible Claim Against Broecker.

Stryker's allegations do not meet the minimum pleading standards of Fed. R. Civ. P. 8(a) and therefore fail to state a claim upon which relief can be granted.[3] Stryker does not plead facts showing that Broecker breached the restrictive covenants in his agreement.

The only allegations about Broecker are that he was a Stryker employee; in his roles as General Manager and then Key Accounts Manager he had access to allegedly confidential Stryker information; he was terminated by Stryker pursuant to a reduction in force; and he then decided to accept a position with DJO, but not until his one-year non-compete obligation ended. Of course it is <u>possible</u> that Broecker may have somehow breached his restrictive covenants. Mere possibility, however, does not equal plausibility sufficient to state a viable claim in federal court: "where a complaint pleads facts that are 'merely consistent with' a

---

[3] For purposes of this Motion to Dismiss, Broecker will analyze the terms of his employment contract under New Jersey law, recognizing that the contract contains a choice of law provision that the contract shall be governed by New Jersey law. (Compl. ¶ 63.) However, Broecker reserves the right to argue that this choice of law provision is unenforceable, and/or that Indiana law should apply to this claim.

defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

Stryker merely recites the legal elements of the claim with little factual support. In addition, Stryker makes no effort to differentiate between the defendants, but rather improperly lumps all of them together to accuse them of collective wrongdoing. *See Pietrangelo*, 2005 WL 1703200, at *10. This approach is particularly absurd here, where each defendant signed his own employment agreement, had different job titles and duties with Stryker, and now each is in a unique employment situation with DJO. In Paragraph 92 of the Complaint, Stryker makes a list of five ways in which the individual defendants allegedly breached their post-employment obligations owed to Stryker, joined by the "and/or" conjunction. As a result, Stryker has failed to put Broecker (or any of the individual defendants) on notice of the claims against him. This impermissibly vague group pleading is not sufficient under Fed. R. Civ. P. 8(a). *Id*.

Stryker has made only one allegation of wrongdoing against Broecker that could conceivably be considered factual:

> Broecker has attended meetings with DJO managers and with the other Individual Defendants, and has brought DJO [sales representatives] on sales calls and to multiple surgeries with doctors in his former Stryker sales territory under the guise that they are solely selling non-competitive products.

11

(Compl. ¶ 70.) Attending meetings with DJO and with the other defendants does not breach his restrictive covenants. The allegation about visits with doctors and DJO representatives to doctors in his former territory, although factual in nature, does nothing to transform possibility into plausibility and therefore the complaint still fails to state a viable breach of contract claim against Broecker. In fact, that Broecker claimed to be "solely selling non-competitive products" is equally consistent with the possibility that he was acting entirely properly. *See Iqbal*, 556 U.S. at 679 (complaint does not state claim when "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct").

Stryker has already admitted that the facts supporting its allegations are a little thin: In seeking expedited discovery, it said, "Stryker wishes to avoid wasting both the Court's and the parties' resources by filing a request for injunctive relief before there is a clear evidentiary basis to do so, although it fully anticipates that the information exchanged during expedited discovery will indeed provide the requisite evidentiary basis." (Doc. 26 at 4.) Indeed, the need for discovery to shore up the bare legal allegations made in the complaint is exactly what *Twombly* and *Iqbal* were meant to guard against: requiring "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the elements of the cause of action. *Twombly*, 550 U.S. at 556; *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2007).

12

In the absence of any factual allegations to support its bare legal conclusions, Stryker fails to meet the minimum federal pleading standards and does not state a claim upon which relief can be granted. Stryker's attempt to lump all of the defendants together further highlights the deficiencies of its claim. The breach of contract claim against Broecker must be dismissed.

### b.   The Restrictive Covenants Are Overbroad and Unenforceable.

Stryker's breach of contract claim against Broecker also fails because the restrictive covenants contained in the Broecker Agreement are overbroad and unenforceable. This Court may dismiss a claim for breach of restrictive covenant if—as is the case here—those covenants are overbroad and unenforceable. *See IDT Corp. v. Touro Coll.*, 376 Fed. Appx. 245, 246 (3d Cir. 2010) (dismissing breach of contract action pursuant to Rule 12(b)(6) finding contract unenforceable); *see also Share Corp. v. Momar Inc.*, 10-CV-109, 2011 WL 284273, at *11 (E.D. Wis. Jan. 26, 2011) (dismissing breach of contract claim pursuant to 12(b)(6), finding non-solicitation and non-disclosure provisions were unreasonable and thus unenforceable); *Medispec, Ltd. v. Chouinard*, 133 F. Supp. 3d 771 (D. Md. 2015) (granting motion to dismiss breach of contract claim pursuant to 12(b)(6) finding covenant not to compete was impermissibly overbroad); *Nortec Communications, Inc. v. Lee-Llacer*, 548 F. Supp. 2d 226, 228 (E.D. Va. 2008) (dismissing breach of

contract claim under 12(b)(6) finding non-competition and non-solicitation provisions invalid and unenforceable).

In New Jersey, "[t]he enforceability of any post-employment restrictive covenant depends … upon its reasonableness under the circumstances." *Richards Mfg. Co. v. Thomas & Betts Corp.*, CIV. 01-4677, 2005 WL 2373413, at *3 (D.N.J. Sept. 27, 2005) (citing *Whitmyer Bros. Inc. v. Doyle,* 58 N.J. 25, 32-33, 274 A.2d 577 (1971)); *Solari Indus., Inc. v. Malady,* 55 N.J. 571, 576 (1970). Whether a restrictive covenant is reasonable is assessed based on three primary factors ("the *Solari/Whitmyer* test"): whether it (1) is reasonably necessary to protect the employer's legitimate interest, (2) causes no undue hardship on the employee, and (3) does not impair public interest. *Id.* An employer's "legitimate interest" must be a protectable interest, not simply a desire to lessen competition. *Raven v. A. Klein & Co., Inc.* 195 N.J. Super. 209, 213 (App. Div. 1984).

> ### i.   The Non-Disclosure Clause is Overbroad and Unenforceable.

Non-disclosure or confidentiality agreements are considered post-employment restrictive covenants and must meet the same reasonableness test in order to be enforceable. *Richards*, CIV 01-4677, 2005 WL 2373413, at *3. The non-disclosure provision of the Broecker Agreement does not pass the test.

The non-disclosure obligation never expires. It prohibits Broecker from

14

disclosing or using Confidential Information at any time or for any reason after his employment ends (without Stryker's written consent). (Compl. Ex. E, § 5.1.) The unlimited nature of this provision, with no restriction as to geographic scope or duration, renders it unreasonable. *See The Community Hospital Group, Inc. v. More, M.D.*, 183 N.J. 36, 58-59 (2005) (duration, geographic limits, and scope of activities prohibited must be narrowly tailored to ensure restrictive covenant is "no broader than necessary to protect the employer's interests.")

More critically, the definition of Confidential Information is so overbroad that it renders the non-disclosure provision unenforceable on its face. "[M]atters of general knowledge within the industry may not be classified as trade secrets or confidential information entitled to protection nor will routine or trivial differences in practices and methods suffice to support restraint of the employee's competition." *Richards*, 2005 WL 2373413, at *4 (quoting *Whitmyer Bros.*, 58 N.J. at 34). Broecker excerpts the entire definition of Confidential Information here in order to demonstrate the vast scope of that information which Stryker seeks to prevent him from using anywhere, in any context, for the rest of his life:

> "Confidential Information" means know-how, trade secrets, and technical, business and financial information and any other non-public information in any way learned by me during my employment with Stryker, including, but not limited to (1) prices, renewal dates and other detailed terms of customer or supplier contracts and proposals; (2) information concerning Stryker's customers, clients, referral sources and vendors, and potential customers, clients, referral sources

15

and vendors, including, but not limited to names of these entities or their employees or representatives, preferences, needs or requirements, purchasing or sales histories, or other customer or client-specific information; (3) supplier and distributor lists; (4) pricing policies, methods of delivering services and products, and marketing and sales plans or strategies; (5) products, product know-how, product technology and product development strategies and plans; (6) employees, personnel or payroll records or information; (7) forecasts, budgets and other non-public financial information; (8) expansion plans, management policies and other business strategies; (9) inventions, research, development, manufacturing, purchasing, finance processes, technologies, machines, computer software, computer hardware, automated systems, engineering, marketing, merchandising and selling. Confidential Information shall not include information that is or becomes part of the public domain, such that it is readily available to the public, through no fault of me.

(Ex. E to Compl. § 2.3.) This definition is all-encompassing. Although purportedly limited to "non-public information," the reality of this restriction is that it would forever prohibit Broecker from using the entirety of the information and experience that he gained while working for Stryker. Stryker should not be permitted to use this overbroad non-disclosure provision to interfere with Broecker's ability to work in his chosen field for the rest of his life.

Even if Stryker has a legitimate, protectable interest in its confidential information, the scope of this non-disclosure provision is not narrowly tailored to protect that interest. Confidentiality agreements this broad in scope "do not comport with the *Solari/Whitmyer* test and the Court finds them, as written, to place an undue burden upon [the employee] and to have a stifling effect upon

competition." *Richards*, 2005 WL 2373413, at *4. Accordingly, this restriction is unreasonable and unenforceable.

> ### ii.   The Non-Compete and Non-Solicitation Clauses are Overbroad and Unenforceable.

The non-compete and non-solicitation provisions in the Broecker Agreement are similarly overbroad and unenforceable under *Solari/Whitmyer*.

The non-compete provision restricts Broecker, for 12 months, from working for a "Conflicting Organization" unless Stryker receives written assurances that the services rendered will not be in connection with any "Conflicting Product or Service." (Compl. Ex. E § 6.3(a).) But the definition of "Conflicting Product or Service" is so broad that it includes any product or service "about which [Broecker] was knowledgeable" during the last 2 years of his Stryker employment. (*Id*. § 2.4, emphasis added.) This definition in effect defines the scope of the non-compete provision to prohibit Broecker from working in any organization that competes with Stryker in any market segment. It is not limited to the particular product line(s) Broecker was selling or the particular industry in which he was assigned to work. Even if Broecker were to move on to another company and sell a non-competitive product, it could be argued that because he "was knowledgeable" about other Stryker product lines during his employment, he breached his non-compete.

17

Similarly, the non-solicitation provision requires that Broecker not contact the customers or <u>prospective</u> customers with whom he had contact, for 12 months. As discussed above, at the time he was terminated by Stryker, Broecker's primary role was contacting and soliciting potential customers who were <u>not</u> purchasing products from Stryker. In other words, Broecker's target accounts were not Stryker customers. Stryker has <u>no</u> legitimate or protectable business interest in preventing Broecker from soliciting non-customers post-termination.

Finally, all the restrictive covenants cause undue hardship to Broecker in light of the fact that Stryker laid him off. In analyzing undue hardship, the court shall determine "the likelihood of the employee finding other work in his or her field and the burden the restriction places on the employee." *More*, 183 N.J. 36 at 59. Particularly relevant to this determination is the circumstances of the termination of the employment relationship and whether it was initiated by the employer or the employee. "[W]here the employer causes the parties to separate, 'enforcement of the covenant may cause hardship on the employee which may fairly be characterized as 'undue' in that the employee has not, by his conduct, contributed to it.'" *Id*. (quoting *Karlin v. Weinberg*, 77 N.J. 408, 423 (1978)).

Stryker chose to terminate Broecker's employment as part of a "departmental restructuring" after nearly 15 years with the company. (Compl. ¶¶ 35, 66.) Having done nothing to cause the termination of his employment,

Broecker is subject to undue hardship by the post-employment restrictions that Stryker seeks to enforce. Indeed, Broecker is now in the unenviable position of having to defend himself in this lawsuit against Stryker's allegations that have no basis in fact, after his one-year non-compete has already expired. Broecker would very much like to work in Indiana in his chosen field, make a living and provide for his family, and move on from Stryker's termination of his employment, but Stryker's lawsuit seeks to prevent him from doing so. Stryker's attempt to tie up Broecker in litigation after he sat out his non-compete year causes undue hardship to Broecker and unjustly impairs his ability to make a living.

Accordingly, Stryker's breach of contract claim must be dismissed.

### 3.     Stryker Fails to State a Claim for Tortious Interference.

Whether this claim is governed by New Jersey law or Indiana law,[4] Stryker fails to state a claim against Broecker for two reasons. First, Stryker fails to plead an essential element of a tortious interference claim: improper conduct. Second,

---

[4] The choice of law provision recites that three things, and three things only, are to be governed by and construed under New Jersey law: (1) the Broecker Agreement, (2) "the parties' performance hereunder," and (3) "the relationship between them," *i.e.*, between Broecker and Stryker. In contrast, the tortious interference claim does "not specifically appear to arise out of" the Broecker Agreement, its performance, or the Stryker-Broecker relationship, "but rather out of extra-contractual events." *Nubenco Enterp., Inc. v. Inversiones Barberena, S.A.*, 963 F. Supp. 353, 373 (D.N.J. 1997) (finding Nicaraguan law applied to tortious interference claim despite New Jersey choice of law provision in contract). Stryker complains about Broecker's actions long after its relationship with Broecker ended. Accordingly, the choice of law provision does not mandate the application of New Jersey law.

with respect to Broecker in particular, Stryker alleges no facts about any interference, let alone a tortious one.

Under Indiana law, "illegal conduct by the defendant is an essential element" of a tortious interference claim. *CDW LLC v. NETech Corp.*, 2013 WL 786448, at *7 (S.D. Ind. Feb. 7, 2013); *see also Levee v. Beeching*, 729 N.E.2d 215, 223 (Ind. Ct. App. 2000) (defamation not "illegal conduct" for tortious interference claim); *Furno v. Citizens Ins. Co. of Am.*, 590 N.E.2d 1137, 1140 (Ind. Ct. App. 1992) (granting motion to dismiss when plaintiff failed to allege facts that "defendant acted illegally by his conduct"). Under New Jersey law, the analogous element is an interference "done intentionally and with malice." *Dayrit v. Memorial Hosp. of Salem*, 2012 WL 1987096, at *8 (D.N.J. June 5, 2012). New Jersey courts distinguish vigorous competition from fraudulent, dishonest, and illegal conduct. *North Jersey Media Group, Inc. v. Bergen Newspaper Group, LLC*, 2013 WL 195451, at *2 (D.N.J. Jan. 18, 2013).

Regardless of whether illegal conduct or malice are required, Stryker does not plead either. Stryker alleges, "Defendants"—collectively—"intentionally and unjustifiably interfered with Stryker's business relationships with its customers and/or prospective customers by soliciting Stryker's customers to leave Stryker and move their business to DJO." (Compl. ¶ 105.) Stryker does not allege anything illegal, fraudulent, or dishonest by any defendant. Instead, its allegation is precisely

20

the "unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has held improper. *Iqbal*, 556 U.S. at 678; *see also Lindenberg v. Arrayit Corp.*, 2104 WL 3854078, at *5 (D.N.J. Aug. 6, 2014) (tortious interference claim "based on conclusions rather than factual allegations" about malice did not state claim).

More importantly, nothing in the Complaint suggests anything Broecker did that was illegal, fraudulent, or dishonest. Stryker thinks the defendants have solicited, or helped others solicit, Stryker customers. (Compl. ¶ 73.) Setting aside the fact that Broecker's non-solicitation clause has expired, Stryker fails to allege any facts that constitute its "knowledge" or support its "belief." Which customers did Broecker solicit? The only facts Stryker makes about Broecker is that he made sales calls in which he said he was "solely selling noncompetitive products." (*Id*.) Similarly, Stryker thinks the defendants have used "confidential Stryker information to solicit Stryker customers," but again does not plead any facts about the basis for this accusation against Broecker. (*Id*. ¶ 74.) What confidential information? Which customers? As in *Ingris*, Stryker "seeks to lump several defendants together without setting forth" what Broecker "is alleged to have done." *Ingris*, 2015 WL 3613499, at *5. This is improper.

For these reasons, the tortious interference claim fails.

### 4.     **Stryker Fails to State a Claim for Unfair Competition.**

As with the tortious interference claim, regardless of whether New Jersey or Indiana law applies, Stryker fails to state a claim.

First, unfair competition is not an independent cause of action in New Jersey. Instead, unfair competition is "a subspecies of the class of torts known as tortious interference." *Sussex Commons Outlets, LLC v. Chelsea Prop. Group, Inc.*, 2010 WL 3772543, at *9 (D.N.J. Sept. 23, 2010); *see also C.R. Bard, Inc. v. Wordtronics Corp.*, 561 A.2d 694, 696 (N.J. Super. Ct. 1989) ("There is no distinct cause of action for unfair competition."). And while Indiana apparently recognizes unfair competition as a tort, it tends to arise in the contexts of consumer deception or passing off goods—neither of which are at issue here. *See Feisher v. Univ. of Evansville*, 755 N.E.2d 589, 598 (Ind. 2001) ("Indiana courts have created a cause of action for unfair competition, defined as 'the attempt to create confusion concerning the source of the unfair competitor's goods.'"); *Durakool, Inc. v. Mercury Displacements Industr., Inc.*, 422 N.E.2d 680, 682 n.3 (Ind. Ct. App. 1981) ("The test of unfair competition is whether the acts of the defendant are such as are calculated to deceive the ordinary buyer making his purchases under the ordinary conditions which prevail in the particular trade to which the controversy relates.").

Further, the unfair competition claim Stryker pleads is based on the same

facts as its tortious interference claim, thus rendering it duplicative. *See Sussex Commons*, 2010 WL 3772543, at *10 (N.J. Super. Ct. App. Div. Sept. 23, 2010); *Diversified Indus., Inc. v. Vinyl Trends, Inc.*, No. 13-6194, 2014 WL 1767471, at *7 (D.N.J. May 1, 2014) (dismissing unfair competition claim as duplicative of tortious interference). Here, there is no dispute that the tortious interference and unfair competition claims are based on the same alleged conduct. In its tortious interference count, Stryker alleges that "Defendants" (collectively) interfered with Stryker customers "by soliciting Stryker's customers to leave Stryker and to move their business to DJO." (Compl. ¶ 105.) The unfair competition claim is expressly based on "the foregoing acts of improper solicitation" and "interference with Stryker's customer relationships." (*Id*. ¶ 109.) When an unfair competition claim is "grounded in the same facts" as a tortious interference claim, as is the case here, New Jersey courts have dismissed it. *Sussex Commons*, 2010 WL 3772543, at *10. The result should be the same here.

Even if unfair competition were an independent, non-duplicative, cause of action, Stryker nevertheless fails to state a claim. Stryker alleges that, collectively, the defendants "undertook the foregoing acts of improper solicitation, tortious interference with Stryker's employment agreements, harm to Stryker's branches, harm to Stryker's goodwill, and interference with Stryker's customer relationships in order to obtain an unfair competitive advantage," and that they did so "willfully"

and with intent to cause Stryker harm. (Compl. ¶¶ 109-10.) First, these allegations are exactly the unsubstantiated types of conclusions that are "not entitled to the assumption of truth." *Santiago*, 629 F.3d at 130. More importantly, the Complaint is devoid of any fact about what <u>Broecker</u> did to solicit, harm, or interfere. As in *C.R. Bard*, Stryker "has not offered anything specific regarding its contention that defendant [Broecker] competed dishonestly." 561 A.2d at 698. Rather, Stryker "speaks in glittering generalities of bad motives and underhanded conduct, offering no proofs in that regard. . . . This is simply not enough." *Id*.

The unfair competition claim should be dismissed.

## B.   <u>The Claims Against Broecker Should Be Dismissed for Lack of Personal Jurisdiction and/or Improper Venue.</u>

As more fully discussed in both the brief submitted by co-defendants DJO Global, Inc. and Kywin Supernaw and the brief submitted by co-defendants Justin Davis, Jake Eisterhold, and Eric Huebner, this case should be dismissed for lack of personal jurisdiction and for improper venue. Broecker incorporates by reference the arguments made by co-defendants.

This Court lacks personal jurisdiction over Broecker because he never availed himself of the privileges of conducting activities in New Jersey; all his Stryker activities, as well as the acts that give rise to Stryker's claim, occurred in Indiana. Broecker simply lacks meaningful contact with New Jersey.

**C.    In the Alternative, This Case Should Be Transferred to the U.S. District Court for the Southern District of Indiana.**

As more fully discussed in the briefs submitted by co-defendants, in the alternative to dismissal for lack of personal jurisdiction, this case should be transferred pursuant to 28 U.S.C. § 1404(a) to the United States District Court for the Southern District of Indiana, because venue is more appropriate in that court.

The Indiana "connections to this case are obvious beyond dispute." *Howmedica Osteonics Corp. v. Sarkisian*, 2015 WL 1780941, at *3 (D.N.J. Apr. 20, 2015) (granting motion to transfer venue despite <u>exact same</u> choice of law provision at issue here). As co-defendants explain, the Southern District of Indiana is an alternative forum where all defendants are amenable to process. Co-defendants also explain the reasons why Stryker's choice of forum is entitled to less deference here, where the operative facts took place outside New Jersey. They explain the private and public interest factors that favor transfer of this case to Indiana. Importantly, the forum selection clauses in some of the individual defendants' agreements are not dispositive of a question of venue: "[V]enue is proper so long as the requirements of §1391(b) are met, irrespective of any forum-selection clause." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas,* 134 S. Ct. 568, 578, 187 L. Ed. 2d 487 (2013); *see also* DJO and Supernaw's Memorandum in Support (Doc. 37) §III.B.2.

Broecker incorporates by reference the arguments made by co-defendants, and specifically adds the following arguments specific to Broecker.

Two private interest factors courts consider are "the defendant's preference" and "the convenience of the parties." *Sarkisian*, 2015 WL 1780941, at *4. Broecker, an individual, prefers that this case be litigated in Indiana, where he resides. (Ex. 1 ¶ 2.) It would be inconvenient and costly for him to travel for trial and court hearings—especially because he has personal responsibilities related to his aging parents. (*Id.* ¶ 15.) While Stryker prefers New Jersey,[5] it is a corporation and thus is less inconvenienced by the possibility of trial in Indiana.

Another private interest factor is "where the claim arose." *Sarkisian*, 2015 WL 1780941, at *4. Stryker's claims against Broecker arose in Indiana. His Stryker employment was within Indiana, and he is accused of breaching restrictive covenants, tortious interference, and unfair competition in Indiana. *See id.* at *8 (Stryker's claims arose in California because defendants "reside in California and were hired to person as sales associates in California; the alleged contractual breaches occurred in California; the clients allegedly stolen are California surgeons; and the restriction on employment impacts California citizens attempting

---

[5] As in *Sarkisian*, it is not clear whether "New Jersey is really the true plaintiff's home forum." 2015 WL 1780941, at *7. As in that case, the "employer" in defendants' agreements varies, and may be "Stryker Corporation from Michigan," *id.* or even "Indiana."

to work in California").

The "convenience and availability of witnesses" and "the location of books and records" are also factors. *Id.* at *4. As with the other defendants, all the witnesses likely to have knowledge about Broecker's post-Stryker activities are in Indiana, and any records relating to Stryker's claims are also in Indiana. (Ex. 1 ¶ 16.)

Indiana has a strong public interest in this case given that this case impacts the right of Broecker, an Indiana citizen, to work in Indiana. In contrast, "New Jersey's interest in this dispute is a creature of contract and does not involve any New Jersey citizens." *Sarkisian*, 2015 WL 1780941, at *9.

As co-defendants explain, this case cannot be resolved with respect to all defendants in New Jersey.[6] That fact, coupled with the private and public interest factors discussed above, weighs in favor of transfer. If this case is not dismissed, it should be transferred.

### <u>Conclusion</u>

Broecker worked for Stryker for nearly 15 years before he was terminated in a departmental restructuring. Stryker sued him for saying that he would take a

---

[6] Co-defendants DJO and Supernaw are not subject to a forum selection clause; co-defendant Davis's agreement has a Michigan venue clause; co-defendant Eisterhold's agreement recites that his employer is "Stryker" (a Michigan corporation); and co-defendant Huebner's agreement recites that his employer is "Indiana."

position with DJO <u>after</u> his non-compete expired—and it has expired. Now, after the year has run, Stryker seeks to enforce the overbroad restrictive covenants in Broecker's employment agreement and to impair his ability to earn a living.

Stryker's baseless claims against Broecker should be dismissed with prejudice so that he can work without fear. Having not even met the minimum standards of federal pleading for stating a claim upon which relief can be granted, Stryker should not be permitted to force Broecker to spend any more time and money in further litigation.

Alternatively, this case should be transferred to the U.S. District Court for the Southern District of Indiana.

Dated: June 15, 2016

Respectfully submitted,

*/s/Andrew Constantine II*

Andrew Constantine II (AC 1118)  Lisa C. Sullivan (*admitted pro hac vice*)
Onofrio de Gennaro (007375)   Laura B. Bacon (*admitted pro hac vice*)
Lina M. Carreras (LC 4184)    NIXON PEABODY LLP
MARON MARVEL BRADLEY &   70 West Madison Street, Suite 3400
ANDERSON LLC       Chicago, Illinois 60602
75 Montgomery Street, Suite 200  Telephone: 312-977-4400
Jersey City, New Jersey 07302   Facsimile: 312-977-4405
Telephone: 201-369-0600
Facsimile: 201-369-0800

*Attorneys for Defendant Tim Broecker*

28