<u>Not for Publication</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWMEDICA OSTEONICS CORP., a subsidiary of STRYKER CORP., <br><br> *Plaintiff,* <br><br> v. <br><br> DJO GLOBAL, INC., *et al,* <br><br> *Defendants.* | Civil Action No. 16-2330 <br><br> **OPINION** |

<u>**John Michael Vazquez, U.S.D.J.**</u>

This matter comes before the Court by way of the motions to dismiss or, in the alternate, to transfer filed by Defendants DJO Global, Inc. ("DJO") and Kywin Supernaw (D.E. 37); Justin Davis, Jake Eisterhold, and Eric Huebner (D.E. 38); Tim Broecker (D.E. 39); and Brad Bolinger (D.E. 40). Plaintiff Howmedica Osteonics Corporation filed briefs in opposition (D.E. 47, 48) to which the Defendants replied (D.E. 49, 50, 51). The parties also submitted supplemental letters after briefing on the motions was complete. D.E. 52, 54, 86. The Court reviewed the submissions in support and in opposition, and held oral argument on the motions. For the reasons stated below, Defendants' motions regarding improper venue are **GRANTED** and this case will be transferred to the United States District Court for the Southern District of Indiana.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Howmedica, a subsidiary of Stryker Corporation ("Stryker"), develops, manufactures, and sells orthopedic implants, instruments, and other products that are used for reconstructive and

trauma surgeries.[1]  Compl. ¶ 16, D.E. 1.  "To sell its products, Stryker relies heavily on its sales representatives and the relationships they cultivate on Stryker's behalf with the surgeons in their respective territories."  *Id.* ¶ 20.  As such, Stryker's sales representatives are responsible for cultivating and growing relationships with surgeons in their territory.  They also "provide technical support and assistance to surgeons during surgeries," and showcase and train surgeons on new products.  *Id.* ¶ 24.  Stryker also employs general managers who are responsible for supervising sales representatives, building customer relationships, and driving sales within their respective branches.  *Id.* ¶ 23.

Howmedica is a New Jersey corporation with its principal place of business in New Jersey. *Id.* ¶ 6.  While not specifically pled, it appears that Stryker is a Michigan corporation.  *See, e.g.,* Broecker Br. at 4, D.E. 39-1.  DJO is a direct competitor of Stryker.  Compl. ¶ 1.  It is incorporated in Delaware and its principal place of business is located in California.  *Id.* ¶ 7.

Justin Davis, Jake Eisterhold, Eric Huebner, Tim Broecker, and Brad Bolinger (collectively, the "Employee Defendants") are former Stryker sales representatives or managers in the Indiana and/or North Central branch, which includes Indiana.  *Id.* ¶¶ 21, 31-35.  The Employee Defendants continue to live and work in Indiana.  *Id.* ¶¶ 9-13.  The Employee Defendants all signed a "Confidentiality, Intellectual Property, Non-Competition and Non-Solicitation Agreement" (the "Agreement" or "Agreements") while working for Stryker.  *Id.* ¶¶ 44-49.  Among other things, the Agreements contain a forum selection clause.  The forum selection clause in the Agreements signed by Eisterhold, Huebner, Broecker, and Bolinger state that "any and all litigation between

---

[1] Although the case was filed by Howmedica, Plaintiff refers to itself exclusively as Stryker.  For consistency, the Court will do the same.  The Court is not addressing Defendants' arguments that Howmedica and Stryker are separate legal entities and that Howmedica is not a party to the Agreements at issue because they are not critical to the Court's venue analysis.

Stryker and me relating to this Agreement will take place exclusively in the State of New Jersey"
and that the employee "consent[s] to personal jurisdiction and venue" in a New Jersey state court
or, "if subject matter jurisdiction exists, in the United States District Court for the District of New
Jersey in Newark." *See, e.g.*, Compl. Ex. A, § 8.2.  Davis' Agreement, however, provides that any
litigation relating to the Agreement "will take place exclusively in the State of Michigan" and that
Davis consents to personal jurisdiction and venue in a Michigan state or federal court.  Compl. Ex.
B., § 8.2.

Stryker terminated Bolinger and Broecker on or about May 15, 2015 due to a departmental
restructuring.  Compl. ¶¶ 64, 66.  Stryker alleges that Bolinger now works for DJO, a direct
competitor of Stryker.  *Id.* ¶¶ 1, 70.  Stryker also contends that Broecker "publically
acknowledged" that he will begin working for DJO when the non-compete obligations in his
Agreement expire and has already "attended meetings with DJO managers and [the Employee
Defendants]," and brought DJO sales representatives on sales calls and surgeries with doctors in
his former Stryker territory.  *Id.*  Moreover, on February, 11, 2016, Davis, Huebner, and Eisterhold
suddenly resigned from Stryker and began working as sales representatives for DJO.  *Id.* ¶¶ 1, 68.
Davis, Huebner, and Eisterhold admitted that they were recruited by Defendant Supernaw, a
former Indiana Stryker sales manager.  *Id.* ¶¶ 30, 69.  Supernaw also lives and works in Indiana.
*Id.* ¶ 8.

Stryker filed suit on April 25, 2016, alleging that the Employee Defendants violated
confidentiality and non-compete provisions in their respective Agreements and that DJO, with
Supernaw's assistance, engaged in a targeted raid of its Indiana sales personnel as a means to

unfairly compete against Stryker.[2]  Defendants filed the current motions, arguing that the case

should be dismissed because of a lack of personal jurisdiction, improper forum, and failure to state

a claim.  Alternately, Defendants argue that this case should be transferred to the Southern District

of Indiana pursuant to 28 U.S.C. § 1404(a).  D.E. 37, 38, 39, 40.  Stryker opposed Defendants'

motions.  D.E. 47, 48.

## II.    VENUE STANDARD

DJO and Supernaw have made potentially viable arguments concerning lack of personal

jurisdiction.  Similarly, DJO and Supernaw have made colorable arguments concerning the lack

of plausible factual allegations in the complaint as to both.  Davis, likewise, credibly points to the

fact that his Agreement contains a Michigan, not New Jersey, forum selection clause.  However,

the Court does not reach these arguments or the motion to transfer pursuant to 28 U.S.C. § 1404

because the Court finds  that venue in New Jersey is not appropriate.[3]

Fed. R. Civ. P. 12(b)(3) permits a district court to dismiss a matter that is filed in the wrong

venue.  A defendant bears the burden of establishing that venue is improper.  *Bockman v. First*

*Am. Mktg. Corp.*, 459 F. App'x 157, 160 (3d Cir. 2012).  When deciding a motion to dismiss for

improper venue, a court accepts the allegations in the complaint as true, and draws all reasonable

inferences and resolves factual conflicts in a plaintiff's favor.  *Id.* at 158 n.1.

---

[2] In June 2016, Stryker requested leave to file a motion for limited, expedited discovery to preserve evidence for an anticipated motion for preliminary injunction.  D.E. 26.  Magistrate Judge Clark denied this request on June 30, 2016.  D.E. 45.  On November 28, 2016, Stryker filed its anticipated motion seeking a temporary restraining order and expedited discovery.  D.E. 55.  After briefing and oral argument, this motion was also denied on December 21, 2016.  D.E. 79.

[3] As fully explained below, this case will be transferred pursuant to 28 U.S.C. § 1406(a), which permits a court to transfer a matter for improper venue regardless of whether it has personal jurisdiction over the parties.  *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) (citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 465-66 (1962)).

4

Venue is governed by 28 U.S.C. § 1391.  Section 1391(b) states that

> [a] civil action may be brought in (1) a judicial district in which any defendants resides, if all defendants are residents of the State in which the District is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to a court's personal jurisdiction with respect to such action.

28 U.S.C. 1391(b).  Venue is governed exclusively through federal venue laws.  *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 577 (2013).  As a result, "[w]hether the parties entered into a contract containing a forum [] selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)."  *Id.*  In addition, a plaintiff's residence is irrelevant to the venue analysis.  *Al-Ghena Int'l Corp. v. Radwan*, 957 F. Supp. 2d 511, 520 (D.N.J. 2013).

If a case falls into at least one of the Section 1391(b) categories, venue is proper.  *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 577.  If, however, the case does not fall into a Section 1391(b) category, venue is improper and the case must be dismissed or transferred pursuant to 28 U.S.C. § 1406(a).[4]  *Id.*  A district court has broad discretion in determining whether to dismiss or transfer a case due to improper venue.  *See Konica Minolta, Inc. v. ICR Co.*, No. 15-1446, 2015 WL 9308252, at *5 (D.N.J. Dec. 22, 2015).  But "dismissal is considered to be a harsh remedy and transfer of venue to another district court in which the action could originally have been brought[] is the preferred remedy."  *Id.* (quoting *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 319 (D.N.J. 1998)).

## III.   ANALYSIS

---

[4] Section 1406(a) provides that the district court "shall dismiss, or if it be in the interest of justice, transfer such a case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).

Stryker asserts that venue is proper under Section 1391 pursuant to the Employee Defendants' Agreements with Stryker, "where they consented to the personal jurisdiction and venue in this Court." Compl. ¶ 15. In *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*, the Supreme Court addressed the impact of forum selection clauses on a court's venue analysis. 134 S. Ct. 568 (2013). The underlying dispute involved a subcontract with a Virginia forum selection clause. When a dispute regarding payment under the subcontract arose, the subcontractor, a Texas corporation who performed work under the subcontract in Texas, brought suit in Texas. *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 575-76. The contractor, a Virginia corporation with its principal place of business in Virginia, moved to dismiss the suit arguing that the forum selection clause "rendered venue in [Texas] 'wrong' under [Section] 1406(a) and 'improper' under Federal Rule of Civil Procedure 12(b)(3)." *Id.* at 576. On appeal, the Supreme Court addressed two issues: (1) how to determine whether a venue is improper and whether a forum selection clause impacts this analysis; and (2) how parties and courts should enforce a forum selection clause. The first issue involved Section 1391 while the second concerned Section 1404. The Supreme Court set forth distinct analyses for each section.

Only the first issue in *Atlantic Marine* is applicable to Defendants' motions. In *Atlantic Marine*, the Supreme Court made clear that forum selection clauses have no impact on whether a venue is improper; venue is determined exclusively by federal venue laws. *Id.* at 576. As a result, the Employee Defendants' forum selection clauses have no bearing on the Court's venue analysis.[5]

---

[5] Stryker argues that DJO, Supernaw and Davis, who are not parties to an operative agreement with a New Jersey forum selection clause, are bound by the forum selection clauses in Broecker, Bolinger, Eisterhold and Huebner's Agreements because they are closely-related parties. Plf's Br. at 18-21, D.E. 48. Even if the Court could consider the forum selection clauses in its venue analysis, DJO, Supernaw, and Davis would not be bound under the closely-related party doctrine.

*See, e.g.*, *Zaretsky v. Gemological Inst. of Am., Inc.*, No. 13-3807, 2014 WL 683983, at *1-2 (D.N.J. Feb. 20, 2014) (refusing to consider forum selection clause when determining whether venue was proper pursuant to Section 1391); *Corp. Air, LLC v. Davis*, No. 13-729, 2014 WL 516582, at *1-2 (W.D. Pa. Feb. 7, 2014) (transferring case filed in the wrong venue pursuant to Sections 1391 and 1406 to a different court than stated in forum selection clause); *Prosperity Bank v. Balboa Music Festival, LLC*, No. 13-288, 2014 WL 1023935, at *2-3 (S.D. Tex. Mar. 13, 2014) (transferring case out of venue stated in forum selection clause because it was improper under Section 1391). Consequently, the Court will focus exclusively on the Section 1391(b) categories to determine whether New Jersey is a proper venue.

---

Courts in this district will only bind parties to a forum selection clause in a contract that they did not sign if they are (1) a third-party beneficiary of the contract; or (2) "so closely related to the contractual relationship at issue that the party should be able to foresee that courts will enforce the clause against it." *RK Envtl., LLC v. Lloyd*, No. 15-3201, 2015 WL 8536556, at *4-7 (D.N.J. Nov. 15, 2015), *report and recommendation adopted*, 2015 WL 8492049 (D.N.J. Dec. 10, 2015). Courts in this district have interpreted the doctrine narrowly, applying it in limited situations such as where the non-signatory is employed by or a principal of the signatory (*Beth Schiffer Fine Photographic Arts, Inc. v. Colex Imaging, Inc.*, No. 10-5321, 2014 WL 1908500, at *5 (D.N.J. May 13, 2014)), or if the non-signatories are specifically mentioned or derive a direct benefit from the underlying contract (*Affiliated Mortg. Prot., LLC v. Tareen*, No. 06-4908, 2007 WL 203947, at *4 (D.N.J. Jan. 23, 2007)). It is clear that DJO, Supernaw, and Davis are not third-party beneficiaries of the Agreements. It is equally clear that the only corporate entity who signed the Agreements was Stryker, so that only *Stryker's* (not DJO's) employee or representative may be bound under the closely-related party claim.
 In making its closely-related party argument, Stryker places heavy emphasis on *Synthes, Inc. v. Emerge Med, Inc.* Plf's Br. at 19-20. In *Synthes*, however, the non-signatory worked closely with the individual defendants while they were still employed by a competitor over several months, "had extensive knowledge" of the non-compete agreements, worked with lawyers to structure a new business that the individual defendants eventually joined in a way that would not violate the agreements, and knew that litigation was foreseeable. 887 F. Supp. 2d 598, 610-11 (E.D. Pa. 2012). Here, Stryker does not plead facts that approach those alleged in *Synthes*. *See also RK Envtl., LLC*, 2015 WL 8536556, at *4 (rejecting *Synthes* as improperly applying the closely-related party doctrine). Moreover, even if Stryker plausibly pled that DJO was aware of the forum selection clauses and had counsel analyze the legal ramifications of the clauses, not all of the clauses in this case state that New Jersey is the proper forum. Davis' Agreement set forth Michigan as the appropriate venue.

7

Although the second issue in *Atlantic Marine* is not relevant to the current motions, the Court will briefly address it because the parties discuss it at length in their briefs. Assuming that a case was initially filed in a proper venue, the Supreme Court determined that a forum selection clause should be enforced through the doctrine of *forum non conveniens* and that 28 U.S.C. § 1404(a) "is merely a codification of the doctrine . . . for the subset of cases in which the transferee forum is within the federal court system." *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 580 (citation omitted). The Court continued that when courts conduct a Section 1404(a) analysis in cases that involve a forum selection clause, "a valid forum selection clause should be given controlling weight in all but the most exceptional cases." *Id.* at 581. As a result, courts should alter the traditional Section 1404(a) analysis by (1) affording a plaintiff's choice of forum no weight; (2) not considering the "private interest factors;" and (3) not applying the original venue's choice-of-law rules. *Id.* at 581-83. Section 1404(a), however, only applies when a case was originally filed in a proper venue. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995) ("Section 1404(a) provides for the transfer of a case where both the original and the requested venue are proper."); *Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 436-37 (D.N.J. 2015). ("[Section] 1404(a) gives a district court discretion to transfer venue for the convenience of the parties even if the court finds that the original venue is proper under 28 U.S.C. § 1391(b)").

In short, a form selection clause is not considered in a Section 1391 review. In contrast, such a clause "may be enforced through a motion to transfer under [Section] 1404(a)." *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 579. As will be discussed at length below, New Jersey is an improper forum under Section 1391. Section 1404(a), therefore, is inapplicable at this stage of the litigation.

The parties also address *Howmedica Osteonics Corp. v. Sarkisian*, No. 14-3449, 2015 WL 1780941 (D.N.J. Apr. 2015) at length, specifically, whether Judge Falk correctly concluded that

8

*Atlantic Marine* was distinguishable and whether *Sarkisian* is applicable to the current motions. *See, e.g.*, Plf's Br. at 14-17   In *Sarkisian*, however, Judge Falk analyzed whether transfer was appropriate under Section 1404(a). *Id.* at *4-9. Consequently, *Sarkisian* is not relevant to the Court's analysis on whether venue is proper under Section 1391, and the parties' specific arguments concerning *Sarkisian* will not be addressed.

New Jersey is an improper venue pursuant to Section 1391. First, it is undisputed that not all of the Defendants are residents of New Jersey as the Employee Defendants clearly reside in Indiana. Compl. ¶¶ 9-13. Section 1391(b)(1), therefore, is inapplicable in this instance. *See* 28 U.S.C. § 1391(b)(1) (providing that a civil action may be brought in a district "in which any defendant resides, *if all defendants are residents of the State in which the district is located*") (emphasis added).

Next, New Jersey is not a proper forum under Section 1391(b)(2), which provides that a case may be brought in a district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). To make this determination, courts look at the nature of the dispute and "the location of those events or omissions giving rise to the claim." *Bockman*, 459 F. App'x at 161 (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)). "Events or omissions that might only have some tangential connection with the dispute in litigation are not enough." *Cottman Transmission Sys., Inc.*, 36 F.3d at 294. As a result, a court should focus on the conduct that allegedly caused the damages at issue. Moreover, in an action sounding in contract, courts consider "where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred." *Ferratex, Inc.*, 121 F. Supp. 3d at 438.

Stryker alleges that many of the Agreements were signed by a New Jersey employee for Plaintiff; the Employee Defendants' payroll, compensation, benefits, and expense reimbursements were processed in New Jersey; and that the Employee Defendants traveled to New Jersey for meetings and trainings. Plf's Br. at 21. Of those stated facts, the first and potentially the training are applicable to the venue analysis as it is conduct that is arguably relevant to the claims here. As to the contracts, Stryker merely contends that a New Jersey representative signed *some* of the Agreements on its behalf. Stryker also fails to allege that the Employee Defendants signed their respective Agreements in New Jersey rather than Indiana.

In any event, Section 1391(b)(2) requires that a "substantial" portion of the events giving rise to the claims occur in a judicial district. Here, it is clear that the substantial relevant conduct at the core of this case occurred in Indiana. Stryker alleges that DJO hired its Indiana sales representatives to work for DJO in Indiana, using their knowledge and resources to take business away from Stryker's Indiana customers. *See, e.g.*, Compl. ¶¶ 2-5. Indeed, Stryker claims that the alleged violations took place in Indiana or the surrounding area, when the Employee Defendants improperly contacted physicians in the North Central branch. Critically, Stryker emphasizes that its employees cultivate and develop relationships with surgeons in a particular geographical area. Here, that area is Indiana not New Jersey. The thrust of Stryker's concerns focuses on the Employee Defendants using such relationships with physicians in Indiana to benefit DJO. *See, e.g.*, Compl. ¶ 70 (alleging that Broecker has brought DJO sales representatives on sales calls and surgeries with doctors in his former Indiana Stryker territory); ¶ 79 (alleging that Stryker lost business in the North Central branch due Defendants' conduct). Because a substantial part of the relevant events occurred in Indiana, that state is an appropriate venue pursuant to Section 1391(b)(2). *See, e.g., Ferratex, Inc.*, 121 F. Supp. 3d at 439 (concluding that New Jersey was

10

proper venue "[a]s contractual negotiations, contract execution, partial performance, and alleged breach appear to have occurred in New Jersey"); *Corp. Air, LLC*, 2014 WL 516582, at \*2-3 (finding that Pennsylvania was not a proper venue based on allegations that Plaintiff maintained its headquarters, processed payroll and benefits, and felt the brunt of the harm in the state because agreements were executed and work was performed in South Carolina).

Finally, this case could have been brought in Indiana. As a result, Section 1391(b)(3) is inapplicable. *See Konica Minolta, Inc.*, 2015 WL 9308252, at \*5.

Because New Jersey is not a proper venue under any of the Section 1391(b) categories and transferring a case is the preferred remedy, the Court will transfer this matter to the Southern District of Indiana pursuant to Section 1406(a).[6] *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 577. A district court may transfer a case to a district in which it could have been brought. 28 U.S.C. § 1406(a). As noted, the Southern District of Indiana is a proper venue under Section 1391(b)(2). Moreover, the Southern District of Indiana clearly has personal jurisdiction over the Employee

---

[6] While not at issue here, applying *Atlantic Marine* strictly in every Section 1391 venue analysis could lead to unanticipated results in some cases. For example, if every defendant here was an Indiana resident with a valid New Jersey forum selection clause, *Atlantic Marine* could be read to require this Court to first transfer the case to Indiana pursuant to Section 1391 and 1406(a). The Southern District of Indiana would likely, however, immediately transfer the case back to this district pursuant to Section 1404(a), in light of *Atlantic Marine*, because of the forum selection clauses. The Court does not believe that the Supreme Court intended such a result, which would result in a waste of time, resources, and money for the parties and judiciary. If presented with such an issue, which is not currently before the Court on these facts, the Court would entertain arguments as to why transfer would be inappropriate. In addition, the Court notes that the Supreme Court did not need to address this hypothetical issue because the underlying case in *Atlantic Marine* was filed in a proper venue under Section 1391 and the single defendant was party to a valid forum selection clause. *Atl. Marine Const. Co., Inc.*, 134 S. Ct. at 576. Further, because a party can waive personal jurisdiction, "an individual right rooted in due process" (*Roy v. Brahmbhatt*, No. 07-5082, 2009 WL 1575276, at \*2 (D.N.J. June 4, 2009) (citation omitted)), it can certainly waive venue, a statutory right. *Huntington Learning Ctr., Inc. v. Read It, N.C., Inc.*, No. 12-3598, 2013 WL 2404174, at \*6 (D.N.J. May 30, 2013) ("Like personal jurisdiction, an objection to venue may be waived.") (citation omitted). Here, however, only some of the Defendants had agreed to a forum selection clause naming New Jersey.

Defendants and Supernaw as there is no dispute that they live and work there (Compl. ¶¶ 8-13). DJO also acknowledges that it is subject to *specific* personal jurisdiction in light of the allegations that it specifically targeted Stryker's Indiana sales representatives and business.[7]  In addition, all of the Defendants, including DJO, consent to transferring this case to the Southern District of Indiana.

Because the Court concludes that New Jersey is an improper venue, it will not address the remaining arguments raised in Defendants' motions.

**IV.    CONCLUSION**

For the reasons set forth above, the motions to dismiss, or in the alternate, to transfer that were filed by Defendants DJO Global, Inc. and Kywin Supernaw (D.E. 37); Justin Davis, Jake Eisterhold, and Eric Huebner (D.E. 38); Tim Broecker (D.E. 39); and Brad Bolinger (D.E. 40) are **GRANTED**.  Accordingly, this case shall be transferred to the United States District Court for Southern District of Indiana.  An appropriate Order accompanies this Opinion.


Dated:  March 27, 2017

John Michael Vazquez, U.S.D.J.

---

[7] At oral argument, counsel for DJO conceded that given the allegations here, Stryker would have specific personal jurisdiction over DJO in the Southern District of Indiana.